JOSEPH LEAL DE TREVINO v. YNDELECIO TREVINO.

(Case No. 1256.)

1. DIVORCE.— When a marriage has been solemnized in Texas, and cause for divorce exists for acts committed in Texas, her courts have jurisdiction to annul the contract of marriage, though at the time the defendant in a suit for that purpose may be permanently residing in a foreign jurisdiction.

2. DIVORCE — SERVICE.— If, in a suit brought for divorce, service be obtained under the act of March 15, 1875 (R. S., 1230), the fact that a foreign government might not regard a judgment based on such service as valid, furnishes no reason why the courts of Texas should not afford relief by assuming jurisdiction.

3. FACT CASE.—See statement of case for evidence held insufficient to authorize a divorce, and some of which should have been excluded without objection.

APPEAL from Cameron. Tried below before the Hon. John C. Russell.

Suit by Yndelecio Trevino against the appellant for a divorce. Service was made under the act of March 15, 1875. (R. S., art. 1230.) The service was made by notice and copy of petition as required by that act, in the city of Matamoras, Mexico. The original return of service was defective, and was by leave of the court amended.

The marriage was proved. The witness, Ricardo Lucio, knew the parties, and testified that he knew also José Maria Leal, who was a peddler, who often visited Josefa on the ranch, "and treated her as his mistress." In answer to a threat by witness that "if he, Leal, did not act differently he would inform the plaintiff," he was answered by Leal that "she was kept by him—that it was all right, and to say nothing to plaintiff." He said he "acted with the woman as with a whore." All this was objected to and excluded, except the declarations of Leal, which were permitted in evidence.

This witness testified that Leal only came when the husband was absent, and that he saw them shut themselves up in the house together three times. Explaining what he meant by saying he observed undue familiarity, he said he saw Leal take hold of her once.

Pecho Cortinas swore that he knew that defendant committed adultery with Leal, because he saw them shut themselves in a house with two rooms, three or four times. Was told that Leal would get into the bed where plaintiff and defenant were sleeping. One night he heard a pistol shot fired, and soon after saw Leal running away in his drawers. A sister of the defendant explained the pistol shot heard by Cortinas, by stating that Leal one night at a late hour was sitting on the side of her bed,

there being no light, and believing there was no one else in the room, when he was suddenly flushed by the plaintiff, who seized him by the hair, and on his breaking loose, fired at him.

The letter referred to in the opinion seems to have been introduced by defendant and not objected to. It was from the plaintiff to his brother-in-law, giving his own version of the pistol shot fired at night. In it he states, that Leal took the liberty to go to plaintiff's bed one night, "approaching on the side where Josefa was. On becoming aware of it (as it was natural, I was sleeping on the same bed), I grasped them and found they were kissing and embracing each other. Alas! brother of my life, I do not know how I could suffer such infamy." The letter proceeds to express a proper amount of indignation, and informs his kinsman that he fired a pistol shot at Leal as he fled. There was much other testimony not important to detail.

It is apparent from the amended pleadings in the case that each party desired a divorce, which may to some extent explain the character of testimony contained in the transcript.

*W. A. Crafts,* for plaintiff in error.

MOORE, CHIEF JUSTICE.—The marriage sought to be dissolved by this suit was contracted in Texas between residents, and, as we are authorized to presume, citizens of Texas. The acts by reason of which the divorce is sought, are alleged to have been committed in Texas, where the plaintiff is now and has continuously since resided. Under these circumstances, we do not think it can be doubted that the court has authority to annul the contract, at least within our jurisdiction; notwithstanding the fact that the defendant, subsequent to the commission of the acts complained of, may have gone beyond the state

and taken up her residence within a foreign country. If we are to concede that a judgment rendered upon service such as that had in this case, should and would be held invalid beyond the jurisdiction in which it is pronounced, this in our opinion would not deprive the court of jurisdiction given by the statute, or furnished a valid reason for refusing appellee the relief asked and given him by the judgment of the district court.

The statute makes no distinction, and we see no reason why there should be any in this character of service, whether the defendant resides in a foreign country or in one of our sister states. Nor is there any better ground for our holding, that an imperfect return of service in this character of cases may not be amended under leave of the court, than where service is had by citation.

But we are clearly of opinion that the court erred in overruling appellant's exceptions to the testimony objected to by her. The evidence upon which the judgment is based consists almost exclusively of mere inferences and conclusions of the witnesses from what they heard or were told, which they were improperly permitted to detail, or of circumstances which may have warranted suspicion, but which certainly constituted no sufficient proof of guilt.

The statements of appellee in his letter to his brother-in-law, although not apparently objected to by appellant, should certainly not have been considered by the court, or regarded as furnishing any valid ground for a decree of divorce, whether objected to or not.

The evidence being insufficient to support the judgment, it is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 20, 1881.]