MONTMORENCY v. MONTMORENCY.

(Court of Civil Appeals of Texas. El Paso. July 12, 1911. Rehearing Denied Oct. 18, 1911.)

DIVORCE (§ 328*) — ABANDONMENT — MARITAL DOMICILE—LOCUS.

As affecting jurisdiction to decree divorce on constructive service, the domicile of an abandoned spouse becomes the marital domicile; and on abandonment of a wife in another jurisdiction, and on her subsequently becoming domiciled in Texas, a decree of a Texas court granting her a divorce on constructive service against the husband, his whereabouts being unknown, is entitled to full faith and credit under Const. U. S. art. 4, § 1.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. § 328.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Lula H. Montmorency against Arthur F. Montmorency. Decree for plaintiff, and defendant appeals. Affirmed.

T. C. Lea, for appellant. Davis & Goggin, for appellee.

PETICOLAS, C. J. This was a suit for divorce brought in El Paso county, Tex., by Lula H. Montmorency, as plaintiff, against Arthur F. Montmorency, as defendant. The case is before us on an agreed statement, and we are not advised thereby on what grounds the divorce was granted, but it is agreed that the facts alleged in plaintiff's original petition were established by competent proof, and that plaintiff, under said proof, would be entitled to a decree of divorce under the laws of the state of Texas, providing the court has jurisdiction to render such decree in view of the decisions of the Supreme Court of the United States in the cases of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, and others, and, as no error is assigned which raises any question except the one adverted to, the agreed statement, while scanty, is sufficient to raise the questions assigned.

It appears from the agreed statement that the plaintiff and defendant were married in

the republic of Mexico on the 3d day of April, 1907, and from the agreed statement and the judgment that the defendant abandoned the plaintiff on the 11th day of May, 1909. The suit was one in which service was had by publication of citation, and it appears that the affidavit for citation by publication and the publication of the citation were duly in compliance with the laws of the state of Texas, that the defendant failed to file an answer, and that an attorney of the El Paso court was appointed to represent him. The judgment recites that the defendant's exception to the jurisdiction of the court and his general exceptions were overruled. The court also found that Lula H. Montmorency, the plaintiff, is an actual, bona fide inhabitant of the state of Texas, and a resident and citizen of the county of El Paso, state of Texas, and that she has resided and had her domicile in the state of Texas and county of El Paso for more than six months preceding the filing of this suit, but the whereabouts of the defendant is unknown to the plaintiff, and that citation by publication had been duly issued and served, and ordered that the bonds of matrimony heretofore existing between the plaintiff and the defendant be, and the same are hereby, annulled and dissolved, and that the plaintiff is hereby divorced from the defendant. It was further ordered that the plaintiff pay all costs. To this judgment the defendant, through his attorney, excepted, and gave notice of appeal, and, perfecting his appeal, has brought the case to this court.

There is but one assignment of error, to the effect that the defendant, whose residence is unknown, being sued by plaintiff for the dissolution of the bonds of matrimony or for divorce in said cause, and constructive service, or service by publication alone having been had, the defendant, who did not appear and answer herein or otherwise subject himself to the jurisdiction of the court, cannot be affected by the decree of the court which is without jurisdiction, and its decree was therefore void, for the reasons that the same is violative of that portion of article 5 of the amendments to the Constitution of the United States of America, providing that "no person," etc., "shall be deprived of life, liberty or property without due process of law, etc.," this being a proceeding in personam and not in rem, and falling within the rule announced in the case of Pennoyer v. Neff. The further reasons set out in said assignment were that said court is without jurisdiction, and its decree would not be entitled to full faith and credit in other states of the Union under the provisions of section 1, art. 4, of the Constitution of the United States of America, and that it appears that neither the domicile of matrimony was in this state, nor that both parties hereto are within this state or county, so that the court, although it had jurisdiction over plaintiff, a

citizen of this state, and over the subject-matter, had no jurisdiction over defendant, and therefore no right to render the decree of divorce. It is apparent that these assignments of error are predicated upon the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. We do not believe upon a careful reading of that case that it was intended or undertook to do more than to decide that in the particular case before them the court of New York was not bound, under the "Full Faith and Credit" clause of the Constitution and the enactments of Congress in reference thereto, to admit in evidence the judgment roll from Connecticut, and we do not believe that there can be found in that decision any holding that a judgment in one of the states in a court of competent jurisdiction where statutory residence and due citation by publication have been had is not valid as to the party residing in that state, and valid within the boundaries of that state. It is apparent, however, that if the Haddock v. Haddock Case decides that suits for divorce are in personam and not in rem, the citation in this case having been by publication, there would, under the authority of Pennoyer v. Neff, be raised a very grave question of whether the trial court had any jurisdiction of any kind, even as to the subject-matter or to the plaintiff below. The case of Haddock v. Haddock was one in which the husband and wife were married and lived in the state of New York, thus fixing the matrimonial domicile in New York. The husband deserted the wife, moved to Connecticut, established his statutory residence, sued for divorce on constructive service, and obtained judgment. Afterwards the wife sued him in New York for divorce and alimony on personal service. On the trial of that case the judgment roll from Connecticut was offered in evidence in bar of the proceedings in New York. The trial court having refused to admit the judgment roll, the question came before the United States Supreme Court; the federal question being: Did the New York court violate the Constitution of the United States by refusing to give to the decree of divorce rendered in the state of Connecticut the faith and credit to which it was entitled?

This question the United States Supreme Court answered in the negative, but Mr. Justice White, in rendering the majority opinion in that case, limited it in the judgment of the writer to the exact question before the court, and in confining their attention to the real question arising in the case he states at the outset certain legal propositions which he says are irrevocably concluded by previous decisions of the court. The fourth of these introductory statements of what he regarded as settled law is as follows: "The general rule stated in the second proposition is, moreover, limited by the

inherent power which all governments must possess over the marriage relation, its formation and dissolution, as regards their own citizens. From this exception it results that where a court of one state, conformably to the laws of such state, or the state, through its legislative department, has acted concerning the dissolution of the marriage tie, as to a citizen of that state, such action is binding in that state as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the state in dealing with its own citizen concerning the marriage relation was repugnant to the due process clause of the Constitution. Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654." Again, he said: "Coming to apply these settled propositions to the case before us, three things are beyond dispute: (a) In view of the authority which government possesses over the marriage relation, no question can arise on this record concerning the right of the state of Connecticut within its borders to give effect to the decree of divorce rendered in favor of the husband by the courts of Connecticut; he being at the time when the decree was rendered domiciled in that state." It is apparent, we think, from the quotations made from the opinion in Haddock v. Haddock that that case does not in any way affect the jurisdiction of a court in Texas to hear and determine a divorce suit on constructive service in accordance with its laws, nor can any question arise concerning the right of the state of Texas within its borders to give effect to the decree of divorce rendered in favor of Lula H. Montmorency by a Texas court, she being at the time the decree was rendered domiciled in that state. In his introductory statement of what he regards as settled law, Mr. Justice White said in his second finding: "Where a personal judgment has been rendered in the courts of a state against a nonresident merely upon constructive service, and therefore without acquiring jurisdiction over the person of the defendant, such judgment may not be enforced in another state in virtue of the full faith and credit clause." And in his third finding: "The principles, however, stated in the previous proposition, are controlling only as to judgments in personam, and do not relate to proceedings in rem. That is to say, in consequence of the authority which government possesses over things within its borders, there is jurisdiction in a court of a state by a proceeding in rem, after the giving of a reasonable opportunity to the owner to defend, to affect things within the jurisdiction of the court, even although jurisdiction is not directly acquired over the person of the owner of the thing. Pennoyer v. Neff, supra." From these statements it has been inferred that the majority opinion of the Supreme Court in that case was that a divorce suit was not a proceeding in rem or quasi in rem. We do not think that this conclusion follows. It perhaps follows that the majority of that court intended to hold that the particular divorce case before them was not in rem, but they certainly could not have intended to hold that no divorce cases are in rem, because in paragraph 7 of their statement of what is settled law they say: "So also it is settled that where the domicile of a husband is in a particular state, and that state is also the domicile of matrimony, the courts of such state having jurisdiction over the husband may, in virtue of the duty of the wife to be at the matrimonial domicile, disregard an unjustifiable absence therefrom, and treat the wife as having her domicile in the state of the matrimonial domicile for the purpose of the dissolution of the marriage, and as a result have power to render a judgment dissolving the marriage which will be binding upon both parties, and will be entitled to recognition in all other states by virtue of the full faith and credit clause. Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794."

It is therefore apparent that as Pennoyer v. Neff held all personal judgments void if rendered on constructive service, and as Mr. Justice White here holds some divorce cases valid on constructive service, both in the state and elsewhere, it must amount to holding that some divorce cases are in rem. Again, it will be noted that Mr. Justice White states as irrevocably fixed law that a personal judgment on constructive service may not be enforced in another state. It is easily apparent from his opinion that some divorce cases on constructive service are enforceable in another state. It follows, therefore, as we have said, that, while it may be implied from Haddock v. Haddock that that particular divorce case was held not in rem, it just as certainly appears that some divorce cases are by that decision impliedly held to be in rem.

In his fifth introductory finding of what is fixed law, Mr. Justice White states (the language here used is our own) that, if the husband and wife are domiciled in a state, there exists jurisdiction in such state to enter a decree on constructive service, which will be entitled to enforcement in another state. In his sixth introductory statement (the language again is our own) he holds that where the domicile of matrimony is in a particular state, and the husband goes into another state in order to avoid his marital obligations, he leaves with the wife the marital domicile until a new domicile be by her elsewhere acquired. In his seventh introductory finding (the language being our own) he says that, where the domicile of matrimony is in a particular state, the courts of that state may disregard an unjustifiable absence of the wife therefrom and treat the wife as having her domicile in the state of the matrimonial domicile, and as a result

such courts have power to render a judgment which will be entitled to recognition in all other states.

Whatever criticisms may be indulged in with reference to the reasoning of the majority in the case of Haddock v. Haddock, it is apparent that it is the judgment of the court of last resort of these United States, and, as such, is entitled to be given the consideration which the dignity of that court and the learning of its judges demand. The decision impresses us with the belief that the reasoning of that decision gives the court of the domicile of the innocent party jurisdiction to render a judgment binding everywhere, and deprives the court of the domicile of the guilty party of jurisdiction to render a judgment binding save in the state where rendered. Mr. Justice White again says: "As New York was the domicile of the wife and the domicile of matrimony from which the husband fled in disregard of his duty, it clearly results from the sixth proposition that the domicile of the wife continued in New York. As there can be no question that the wife was not constructively present in Connecticut by virtue of a matrimonial domicile in that state, and was only constructively served, it is apparent that the Connecticut court did not acquire jurisdiction over the wife."

Keeping in mind that we are endeavoring to determine what were the determining factors of the decision in Haddock v. Haddock, and also that we are endeavoring to determine whether the court held all divorce cases to be in personam, it is apparent, we think, that the question of whether a divorce suit was one in rem or in personam was included in, and, as an integral part of, their holding that one divorce suit on constructive service might be valid and entitled to full faith and credit, and another might not be; that the one they held valid they impliedly held to be in rem, and the one they held invalid they impliedly held to be in personam, or, as Mr. Justice White states the question: "The final question is whether to enforce in another jurisdiction the Connecticut decree would not be to enforce in one state a personal judgment rendered in another state against a defendant over whom the court of the state rendering the judgment had not acquired jurisdiction." It is apparent, also, we think, that the determining factor in the minds of the majority of the court was the domicile of matrimony; that the state of the matrimonial domicile had jurisdiction to decree a divorce on constructive service, valid everywhere, for, while they do not so directly state, they seem to treat the domicile of matrimony as the res. To us it seems that the res of a divorce suit is the relation of the parties; that is, the partnership as distinguished from the individuals who compose the partnership. Reading Haddock v. Haddock, and substituting matrimonial relation for the matrimonial domicile, it would follow (if that decision is correct in its reasoning) that, the matrimonial relation having its inception in New York, the husband, when he abandoned the wife, left with her the matrimonial relation. Applying the theory adopted in that case, the husband being the one at fault and the one who deserted the matrimonial relation, this left the res in New York, and he had in Connecticut only a suit in personam and could not have a suit in rem because the res under the facts of that case had remained with the wife.

Continuing, however, our examination of Haddock v. Haddock, using the test which the majority used in that case, we find in their introductory statement of what is settled law the majority of the Supreme Court, in paragraph 6, used this language: "Where the domicile of matrimony was in a particular state, and the husband abandons his wife, and goes into another state in order to avoid his marital obligations, such other state to which the husband has wrongfully fled does not in the nature of things become a new domicile of matrimony, and therefore is not to be treated as the actual or constructive domicile of the wife; hence, the place where the wife was domiciled when so abandoned constitutes her legal domicile until a new actual domicile be by her elsewhere acquired." This was clearly expressed in Barber v. Barber, 21 How. 582, 595, 16 L. Ed. 226, 230, where it was said: "The general rule is that a voluntary separation will not give to the wife a different domiciliation in law from that of her husband. But if the husband, as is the fact in this case, abandons their domicile and his wife, to get rid of all those conjugal obligations which the marriage relation imposes upon him, neither giving to her the necessaries nor the comforts suitable to their condition and his fortune, and relinquishes altogether his marital control and protection, he yields up that power and authority over her which alone makes his domicile hers." And in applying these settled propositions to the case before him Mr. Justice White says: "As New York was the domicile of the wife and the domicile of matrimony, from which the husband fled in disregard of his duty, it clearly results from the sixth proposition that the domicile of the wife continued in New York. As then there can be no question that the wife was not constructively present in Connecticut by virtue of a matrimonial domicile in that state, and was not there individually domiciled, and did not appear in the divorce cause, and was only constructively served with notice of the pendency of that action, it is apparent that the Connecticut court did not acquire jurisdiction over the wife within the fifth and seventh propositions; that is, did not acquire such jurisdiction by virtue of the domicile of the wife within the state or as

the result of personal service upon her within its borders." From this it is apparent that where the husband abandons his wife in order to avoid his marital obligations, the state to which he flees does not become a new domicile of matrimony, or, as we have put it, he does not take with him the marital relation. It further appears that the wife when so abandoned retains the marital domicile (i. e., the marital relation), and may take it with her to where she acquires a new domicile. So we think that a fair reading of the opinion in Haddock v. Haddock drives home the conclusion that the marital domicile stays with the party who is abandoned, or who is not at fault, and that such party can change and take with him or her the marital domicile.

It seems then concluded by the federal authorities (see Barber v. Barber, 21 How. 582, 16 L. Ed. 226; Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794), and by Haddock v. Haddock, that, when the wife is deserted by the husband, the matrimonial domicile stays with her, and that she may acquire a new domicile, which will be the matrimonial domicile. See, also, Ditson v. Ditson, 4 R. I. 87. As we have said, to our minds the case of Haddock v. Haddock is based on the fiction that the matrimonial domicile stays with and follows the innocent party, whether husband or wife, and that, no matter where the innocent party may be, the matrimonial domicile is there, and the guilty party is always constructively present, and therefore the court of that state has constructively both parties before it. Applying the logic of this construction of Haddock v. Haddock, it would follow that the state of the domicile of the innocent party could render a valid decree of divorce entitled to full faith and credit everywhere, but the state of the domicile of the guilty party could render a decree valid only as to that party and in that state.

Applying what we believe Haddock v. Haddock to have decided to the case at bar, we find the plaintiff was abandoned by the defendant, thus leaving with her the matrimonial domicile. In other words, her domicile was the matrimonial domicile. When she moved to Texas, it became her domicile, and became the matrimonial domicile. The court of Texas had before it the plaintiff and the matrimonial domicile, and constructively the husband. Its judgment therefore, under Haddock v. Haddock, was valid in Texas and entitled to full faith and credit under the acts of Congress and the federal Constitution, and its jurisdiction was complete.

The case is therefore affirmed.