**BELL et al v. WEDGWORTH et al.**
No. 13001.

Court of Civil Appeals of Texas. Fort Worth.

June 1, 1934.

Rehearing Denied June 29, 1934.

McCart, Curtis & McCart, of Fort Worth, for appellants.

V. K. Wedgworth, of Fort Worth, pro se.

DUNKLIN, Chief Justice.

Riley Bell and wife, Bettie Bell, have appealed from a judgment denying them the right to participate in the benefits of a war risk insurance policy issued by the government in favor of Roscoe C. Blackburn. Following are the facts agreed to by all the parties upon the trial of the case:

Roscoe C. Blackburn and Minnie Bell, daughter of plaintiff, were legally married in Fort Worth, Tex., on October 4, 1909. They continued to reside in Fort Worth for some

time after their marriage until they moved to Lancaster county, Neb., where they resided until Roscoe was drafted as a soldier in the United States Army during the World War. While serving as a soldier in that war he was totally and permanently disabled, and after his return to the United States he continued as a patient in government hospitals until his death. The government issued to him as a disabled soldier a war risk policy for $10,000, in which his mother was named as beneficiary. He drew monthly payments of $57.50 on the policy from December, 1920, until February, 1922, inclusive, and on March 4, 1922, he died intestate in a government hospital at El Paso, Tex. After his death his mother, Minerva Oliver, drew monthly payments on the policy until her death in November, 1926. Roscoe C. Blackburn left surviving him no children nor descendants of children, or father, brother or sister, or their descendants, except his sister Birdie Robinson, and Reuben and Margaret Thompson, surviving children of a deceased sister. Minnie Bell Blackburn, former wife of Roscoe C. Blackburn, died intestate in the state of Nebraska on October 23, 1928, leaving no children or other descendants, or brothers or sisters or their descendants, but leaving surviving her parents, Riley Bell and Bettie Bell, plaintiffs in this suit, who have never drawn any payments on the war risk policy. The cash value due on that policy at the time of the death of Minerva Oliver, mother of the insured, was $7,677, which the government paid over to V. K. Wedgworth, the duly qualified administrator of the estate of Roscoe C. Blackburn, deceased. As such administrator Wedgworth has been allowed a credit in the sum of $2,854.60 for advancements made to Birdie Robinson, sister of deceased, Margaret Thompson, his niece, and costs of administration, and no contest has been made of those allowances.

The probate court of Tarrant county, in which the administration is pending, entered an order removing Wedgworth as administrator of the estate, and Dan E. Lydick, who was appointed in his stead, has duly qualified as administrator. Wedgworth appealed from the order removing him to the district court where it was affirmed, and his appeal from that order to the Court of Appeals was overruled [45 S.W.(2d) 427] and an application for writ of error to that decision was by the Supreme Court dismissed. Thereafter, and upon an order of the district court in which the present suit was pending, the balance of the funds remaining in his hands as administrator was deposited with the clerk of said court to be held by him subject to disposition thereof by that court.

Answers were filed in this suit by all the defendants, to wit, Birdie Robinson, Reuben Thompson, and Margaret Thompson, minors, by Jack Binion, their duly appointed guardian, V. K. Wedgworth, former administrator of the estate, and Dan E. Lydick, present administrator.

Wedgworth filed a cross-action for an allowance of $500 to him out of the funds coming into his hands as administrator, in addition to the statutory commissions of $283.85 included in the $2,854.60 approved by the court.

Judgment was rendered denying plaintiffs any relief; also denying Wedgworth's claim for additional compensation and awarding to Dan E. Lydick, administrator, and the other defendants, as heirs of Roscoe C. Blackburn, a recovery against Wedgworth as administrator for the balance remaining in his hands when he was removed and displaced by Lydick, and directing that those funds be turned over to Lydick as such administrator.

On the trial, the defendants introduced in evidence a certified copy of a divorce decree granted to Minnie Bell Blackburn in a suit instituted by her against Roscoe C. Blackburn in the district court of Lancaster county, Neb., dated October 21, 1919. The number of that suit on the docket of that court was No. 4036. That decree was in the usual and regular form of a divorce decree in the state of Texas, except the concluding portion thereof which was as follows: "This decree to be absolute six months from date hereof."

Defendants also introduced copies of plaintiffs' petition and nonresident summons issued for the defendant Roscoe C. Blackburn with a return thereon showing that the same was served on him in Wayne county, Mich. The record in that suit did not contain any answer or entry of appearance by the defendant, Roscoe C. Blackburn. Copies of the entire record in that suit were all duly authenticated in accordance with the requirements of the full faith and credit provisions of the Federal Constitution (article 4, § 1) and acts of Congress, and were all introduced in evidence. The certificate of the clerk of that court to those copies contained the following additional language: "I further certify that the papers mentioned above (the petition, non resident notice, return thereon, and the divorce decree) constitute all the documents of every kind and character filed in said cause."

The plaintiffs objected to the admission of all of that documentary evidence; and over the objection of defendants, they introduced the following instrument in writing:

"Minnie Bell Blackburn vs. Roscoe C. Blackburn. No. 4036.

"In the District Court of Lancaster County, Nebraska.

"We, the parties to the above numbered and entitled cause, do hereby agree that the preliminary judgment entered in said cause shall be set aside and that the parties shall resume their full marriage relations.

"This November 19, 1919.

"Roscoe C. Blackburn
"Minnie Bell Blackburn."

That agreement was never filed in the district court of Lancaster county where the divorce·was decreed, and therefore no action was taken upon it; and defendants objected to it by reason of that fact.

Over defendants' objection on the same ground, plaintiffs also introduced the following letter:

"Flint, Michigan, February 20, 1920,

"Mrs. Minnie Bell Blackburn,

"My dear Wife: I was glad to get your letter and was sorry to hear that you was sick. As soon as I feel better I will go to town and get you the money you asked for. When I get better I am thinking about going back to Texas and buying a chicken ranch where I can make a living without working so hard. I wish you would arrange to meet me either in Saint Louis or Kansas City. I will try to send you the money for your expenses. Be sweet until I see you which I pray will not be long.

"Your husband,

"R. C. B."

It is manifest that those two instruments could not be given effect to suspend or modify the decree of divorce.

Under the full faith and credit provisions of the Federal Constitution and the acts of Congress, the divorce decree was admissible at all events. And since there was no pleading nor proof of the applicable laws of the state of Nebraska, it must be presumed that they are the same as the laws of Texas. And in the absence of any showing that the decree was ever modified or changed in any respect by the court rendering it, we think it clear that it was a valid decree of divorce.

Article 4631, Rev. Civ. Statutes of Texas, provides that a suit for divorce must be instituted in the county where plaintiff resides; and article 2037 provides for personal service of citation upon the defendant if he or she be a resident of another state. See, also, 15 Tex. Jur. p. 530, § 70. In section 93. p. 560, of the same volume, this is said: "In Texas a divorce decree is absolute from the date of its entry unless set aside or appealed from. It has the legal effect of conclusively establishing the status of the parties as single persons, operating, it has been said, in rem and terminating the marriage relation."

On pages 572 to 575 of the same volume there is a discussion of many decisions of courts of last resort in this state in divorce proceedings in which full faith and credit was given to decrees of divorce in other states granted to plaintiffs who were residents in those states, and based on service by publication on the defendants who were nonresidents of those states. Among the decisions so holding are Montmorency v. Montmorency (Tex. Civ. App.) 139 S. W. 1168; Griffin v. Griffin, 54 Tex. Civ. App. 619, 117 S. W. 910; Stuart v. Cole, 42 Tex. Civ. App. 478, 92 S. W. 1040; Trevino v. Trevino, 54 Tex. 261. In those decisions it was reasoned that a suit for divorce is not a mere suit in personam, falling under the decisions of Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, and Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, but is a suit to dissolve the status of marriage, and is therefore in the nature of an action in rem and within the jurisdiction of the state where the suit was instituted, even though the defendant be a nonresident.

In 25 Tex. Juris. page 366, many decisions are cited announcing the general rule that a judgment, which determines the rights of parties to a suit and disposes of all the issues involved, is a final judgment, although it may require ulterior proceedings to carry it into effect. Among the decisions cited are Graham v. Coolidge, 30 Tex. Civ. App. 273, 70 S. W. 231, in which it was held that the finality of the judgment was not affected by the fact that the court reserved authority to change or modify it as to remedial matters, where those reservations did not destroy the force and effect of the decree.

Under the decisions of this state the recital in the decree of divorce that it would become absolute six months from its date should be considered as surplusage, since by virtue of our statutes it became final after the adjournment of the term of court during which it was rendered. But whether surplusage or not, the decree by its terms became final, at all events, six months from its date, which period expired April 21, 1920. Vickers v. Faubion

(Tex. Civ. App.) 224 S. W. 803, and authorities there cited.

Another contention is made that the proceeds of the policy in controversy was community property under the laws of this state, and therefore Minnie Bell Blackburn's one-half interest therein passed to plaintiffs under the laws of descent and distribution of this state. This contention is overruled.

In Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 259, 76 L. Ed. 419, 81 A. L. R. 923, decided by the United States Supreme Court on February 15, 1932, the War Veterans' Act of Congress, providing for disability insurance, was reviewed, and we quote from that decision as follows:

"The Act of March 4, 1925, c. 553, 43 Stat. 1302, 1310 (38 USCA § 514), amended section 303 of the World War Veterans' Act of 1924 (which had in turn amended and modified the preceding acts) to read as follows:

" 'If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award.'

"The amendment, in express terms, was made retroactive so as to take effect as of October 6, 1917, a provision undoubtedly within the power of Congress, for the reasons stated by this court in White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530.

"By that amendment, the rule, which, upon the happening of the contingencies named in the prior acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and 'the estate of the insured' was wholly substituted as the payee. All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The

state courts, with almost entire unanimity, have reached the same conclusion."

In the footnotes, numerous decisions are cited to support that announcement, including Battaglia v. Battaglia (Tex. Civ. App.) 290 S. W. 296; Turner v. Thomas (Tex. Civ. App.) 30 S.W.(2d) 558.

It thus appears that by the act of Congress the proceeds of the policy now in suit vested in the estate of Roscoe C. Blackburn at the time of his death to be distributed to his heirs at that time, and that his former wife, from whom he had theretofore been divorced, was not his heir, and therefore not entitled to participate therein.

V. K. Wedgworth did not except to the action of the trial court in denying his cross-action for additional compensation as administrator, and awarding to Dan E. Lydick, as administrator, the proceeds of the insurance policy to the exclusion of him, Wedgworth, as administrator, nor give notice of appeal from those rulings. Accordingly, the judgment in those respects is left undisturbed. But in all other respects the judgment of the trial court is affirmed. 3 Tex. Jur. pp. 284–289.

Judgment affirmed in part; left undisturbed in part.

On Motion for Rehearing by Appellants.

If, as insisted by appellants, the policy of insurance in controversy became the community property of Roscoe C. Blackburn and his former wife, Minnie Bell Blackburn, the burden was upon them to allege and prove that the policy of insurance was acquired before Minnie Bell Blackburn was divorced from Roscoe C. Blackburn, and this they failed to do.

The agreed statement of facts filed in the record here shows that Roscoe C. Blackburn, while serving as a soldier in the United States Army at the time of the World War, became totally and permanently disabled and by reason thereof was entitled to a United States war risk policy for $10,000; but there is no showing in the record whether said disability occurred before or after the date when Minnie Bell Blackburn was granted a divorce from Roscoe C. Blackburn; nor does it appear when the war insurance policy in controversy was in fact issued.

It therefore follows that appellants failed to show a right of recovery, on the theory that the policy became the community property of the insured and his former wife, even though it could be said that that contention could be given effect in spite of the express

provisions of the War Veterans' Act of March 4, 1925 (38 USCA § 514), to the contrary.

The motion for rehearing is overruled.