MARGUERITE T. PAYNE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 108364, 108365. Promulgated December 29, 1942.

*J. P. Jackson, Esq.*, for the petitioner.
*D. D. Smith, Esq.*, for the respondent.

**362**

OPPER, *Judge:* The question is whether petitioner, a married woman, was entitled to treat her income in the tax years as community income so as to be permitted to report and pay tax on only one-half of the total. Although, as the question comes before us, it requires a determination of the rights and obligations of petitioner as to the payment of taxes, the claim which she makes in this respect is not an initial or independent assertion but derives from the contention that the part of the income on which she seeks to escape tax liability is legally and actually the income of another and does not belong to her at all. If that position is to be accepted, it must be on the ground that the income in controversy belonged to petitioner's husband and not to her. *Poe* v. *Seaborn*, 282 U. S. 101; and cf. *United States* v. *Robbins*, 269 U. S. 315. The preliminary and fundamental question is therefore one of law and requires consideration of the rights of petitioner's husband in this income under the circumstances shown to exist in these proceedings. If it can not be concluded that the income was that of the husband, petitioner's contention that it should be taxed to him and that she has no tax obligation in connection with it must fail.

It will be recognized immediately that the present situation is the converse of those presented in *Herbert Marshall*, 41 B. T. A. 1064, and *Paul Cavanagh*, 42 B. T. A. 1037, affd. (C. C. A., 9th Cir.), 125 Fed. (2d) 366. In each of those cases the income in controversy was that of the husband and the question was whether the rights of the respective wives were such by reason of community property law that the husband was not taxable on the wife's portion. In the *Marshall* case the rule was invoked that the domicile of the wife follows that of the husband and that, even though the wife did not actually reside there, "it must be held that the petitioner and his wife were legally domiciled in California during 1934 and 1935, and that the earnings of the petitioner constituted community property."

Following this principle the Board said in the *Cavanagh* proceeding: "In the instant case there have been no court proceedings instituted for divorce, separation, or property settlement. Neither can the wife be said to have deserted her husband. There is no evidence that he ever asked her to live with him in California. Under these circumstances the general common law rule that the wife's domicile follows that of her husband is applicable. It is a legal fiction, but California has followed that rule." The same may be said of Texas, where this petitioner claims to have been domiciled in invoking the community property law. "It is the general rule that the domicil of the husband is the domicil of the wife. Her domicil is drawn to and follows his, and he has the right to select it; and when selected by

him it is her duty to follow, and her refusal without sufficient excuse amounts to desertion." Speer, Law of Marital Rights in Texas, 95; *Miller* v. *Stine* (Tex.), 99 S. W. (2d) 397.

Here it is demonstrated that the husband's domicile and therefore that of the marital community was at all times in the State of Ohio. "The agreement to separate" did not come until the very end of the period we are considering here, "over the turn of the year of 1939 and 1940." There was no desertion of the wife by the husband and no act of the husband which excused the wife for leaving him. See *Montmorency* v. *Montmorency* (Tex.), 139 S. W. 1168. This appears conclusively for our purposes from the Ohio divorce decree subsequently obtained, which finds "That the defendant (petitioner) was guilty of gross neglect of duty to the plaintiff (the husband)," and grants the divorce in the husband's favor. See *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35.

If, therefore, we were to follow dogmatically the theory of the *Marshall* and *Cavanagh* cases, we should be led to hold that petitioner was foreclosed as a matter of law from obtaining even a personal domicile in the State of Texas; that the domicile of the husband, of the marital community, and therefore of petitioner, remained at all times in the State of Ohio; and that, since that state recognizes no community property rights, the income belonged in its entirety to petitioner.

Since, however, it is the right of the husband in this income with which we are primarily concerned, it seems unnecessary for purposes of this case to proceed to these lengths. We may assume that as a matter of law petitioner could obtain a personal domicile in the State of Texas, and that as a matter of fact her state of mind and her acts were such that she did actually obtain such a domicile, although we decide neither of these questions. It still remains to be seen whether the husband would thereby have acquired a community interest in petitioner's income.

This right is obviously different from the interest which a wife obtains in the income of her husband. Thus, in *Commissioner* v. *Cavanagh*, *supra*, the Board was affirmed, but the court distinguished the case from that of a wife, saying: "It is true that a wife without fault may acquire a domicile separate from that of her husband for certain purposes, and that her earnings while living separate and apart from her husband are her separate property, C. C. 169, but this does not affect the status of the earnings of the husband. They are and in such circumstances remain community property of the spouses." Lest it be rejoined that California law may differ from that of Texas, an examination will show that the latter's statutory system of community property applies only where Texas

is the matrimonial domicile. "It is a generally accepted doctrine that the law of the matrimonial domicil governs the rights of married persons where there is no express nuptial contract * * * Generally the law of the matrimonial domicil governs the status of the parties, the legitimacy of their children, and their property rights in movables." Speer, op. cit. 110. It would follow that only upon becoming domiciled in Texas would a husband secure community property rights, and this is the emphatic inference from the express declaration of the Texas law that "the marital rights" of persons married elsewhere shall upon their removal to Texas "be regulated by the laws of this state." Vernon's Rev. Civ. Stat. § 4627. To be consistent with the principle of this provision one must conclude that, in the absence of a previous matrimonial domicile in Texas, a husband who remains domiciled outside the state secures no community rights in the income of a wife merely because she alone acquires a Texas domicile. And while neither the parties nor an independent search reveals any decision holding that such is the Texas law, neither does it appear that the local courts have ever accorded comparable relief to any husband under circumstances of that character.

The conduct of the parties confirms this view. No claim was ever made by petitioner's husband nor recognized by petitioner that this was his income. No property settlement in his favor took place at the time of the divorce. While these actions can be construed, in accordance with petitioner's suggestion, as in the nature of a gift by the husband to the wife, he was apparently in meager financial circumstances and the conduct in question is more easily accountable as an assumption by both parties that the husband had no true legal interest in any of these funds.

We may go further and say that the lack of any authority, statutory or judicial, justifying the conclusion that under state law the income in question belonged to the husband, utterly precludes the successful prosecution of petitioner's claim here. Since petitioner actually received the income in controversy, it was incumbent upon her to show that the normal and generally anticipated tax consequences do not for some reason follow. "* * * petitioner's receipt of the payments in question erects at the threshold a compelling inference that as recipient of the income he was taxable upon it. *National City Bank of New York* v. *Helvering* (C. C. A., 2nd Cir.), 98 Fed. (2d) 93; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417." *Clinton Davidson*, 43 B. T. A. 576, 585. Thus, the burden of legal persuasion to satisfy us that the state law would so operate as to confer upon the husband the necessary community rights has not been met. The absence of any such showing requires that the

issue be determined in respondent's favor. *Helvering* v. *Fitch*, 309 U. S. 149; *Helvering* v. *Leonard*, 310 U. S. 80. Accordingly, we perceive no error in respondent's determination.

*Decision will be entered for respondent.*