ESTATE OF WILLIAM BEALE HIBBS, DECEASED, AMERICAN SECURITY AND TRUST COMPANY, TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF WILLIAM BEALE HIBBS, DECEASED, TRANSFEROR, JOHN S. FLANNERY, TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 111541, 111542.   Promulgated February 28, 1951.

*C. L. Aiello, Esq.,* and *G. Bowdoin Craighill, Jr., Esq.,* for the petitioners.

*Sanford M. Stoddard, Esq.,* for the respondent.

536

538

**OPINION.**

Van Fossan, *Judge:* The issue is whether any interest in property transferred by the decedent in trust on June 1, 1928, and on November 20, 1928, should be included in his gross estate.

It should be noted at the outset that we are here concerned only with the *possibility* of a reversionary interest arising by operation of law as opposed to such an interest arising by the express terms of the instrument of transfer. *Helvering* v. *Hallock*, 309 U. S. 106, held that where there was an expressly retained reversion *in the instrument of transfer*, the property so transferred was includible in the decedent's gross estate under section 811 (c) of the Code as a transfer to take effect in possession or enjoyment at or after death. The respondent's regulations promulgated subsequent to that decision interpreted the *Hallock* doctrine to include reversions arising by operation of law. Decisions subsequent to the *Hallock* case were largely controlled by the degree of remoteness of the reversion present or whether such a reversion was intended by the transferor.[1] *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701, resolved this question holding that the degree of remoteness of a reversion was immaterial and that the bare existence of a reversion by operation of law, regardless of the grantor's intent, was sufficient to bring the transferred property within the gross estate. After the *Spiegel* case and its companion case *Commissioner* v. *Estate of Church*, 335 U. S. 632, Congress amended section 811 (c) with P. L.

---

[1] See The Hallock Problem, 58 Harvard Law Review 1141.

378, 81st Cong. (1949) undertaking to limit, in part, the application of those cases.  Section 811 (c) (2) of the Code as added in 1949, provides that a transfer shall not be within the purview of section 811 (c) as a transfer intended to take effect in possession or enjoyment at or after death "unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property."  Section 7 (b) of P. L. 378 provides, however, that the amendments thereby made "shall be applicable with respect to decedents dying after February 10, 1939." [2] The decedent in this case died in 1937 and for reasons not here important, this litigation has been delayed until now.

We must consider the instant transfers in the light of the law [3] as it stood at decedent's death, prior to its change in 1949, and as interpreted by the *Spiegel* case.

One other prefatory point should be noted, viz., the implication of the decedent's reservation of a life estate in each of the trusts under consideration.  In the *Church* case it was held that a pre-1931 transfer with the retention of a life estate (as here) was taxable as taking "effect in possession or enjoyment at or after his death."  The effect of the *Church* decision as to pre-1949 transfers has been mitigated by the 1949 change in the law, but prior to such change and subsequent to the *Church* decision, the respondent promulgated changes to his Regulations 105, section 81.17, 1949–2 C. B. 114.[4]  This change in the

---

[2] The date of the enactment of the Internal Revenue Code.  See Conference Committee Report on P. L. 378, Sections 7 and 8, 1949–2 C. B. 296.

[3] Sec. 302 (c) of the 1926 Act as amended by the Joint Resolution of 1931 and section 803 (a) of the 1932 Act provide for the inclusion in the gross estate of the value of property:

(c) To the extent of any interest therein of which the decedent has at any time made a transfer. by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, * * *.

[4] SEC. 81.17. Transfers Intended to Take Effect at or After the Decedent's Death.—A transfer of an interest in property by the decedent during his life (other than a *bona fide* sale for an adequate and full consideration in money or money's worth) is "intended to take effect in possession or enjoyment at or after his death," and hence the value of such property interest is includible in his gross estate, if

(1) possession or enjoyment of the transferred interest can be obtained only by beneficiaries who must survive the decedent, and

(2) the decedent or his estate possesses any right or interest in the property (whether arising by the express terms of the instrument of transfer or otherwise). A right to the possession or enjoyment of, or a right to the income from, the property, or the right to designate the persons who shall possess or enjoy the property or the income therefrom, constitutes a right or interest in the property.  (See also sections 81.18 and 81.19.)  Where possession or enjoyment of the transferred interest can be obtained by beneficiaries either by surviving the decedent or through the occurrence of some other event or through the exercise of a power, subparagraph (1) shall not be considered as satisfied unless, from a consideration of the terms and circumstances of the transfer as a whole, the power or event is deemed to be unreal, in which case such event or power shall be disregarded.  Except as provided in the next to the last paragraph of this section,

Regulations excluded from the gross estate, as a transfer to take effect at death, property transferred by decedents dying on or before the date of the *Church* decision if the decedent's only right or interest in the property transferred consisted of an estate for his life.

The respondent does not, therefore, contend that the instant transfers are includible by reason of the decedent's reservation of a life estate. This leaves the litigated question of whether there was any possibility of a reversion or a resulting trust in the decedent's estate of the trust corpora. It must be to his estate, if at all, because the decedent was a life tenant in one trust and had a remainder for life in the other. Thus the trusts would continue and could not terminate at least until the decedent's death.

The trust created on June 1, 1928, provided for a life estate in the decedent, then a life estate in his daughter. The trust created on November 20, 1928, provided for a life estate in decedent's sister, Minnie Hibbs McClellan, then a life estate in decedent, then a life estate in his daughter. The trusts were to terminate on the death of the life tenants and each trust provided for the principal to go to the decedent's two grandsons. (A third grandson was born in 1930 but these trusts were not amended to mention him.) It was further provided in each trust that if the younger grandson had not then reached the age of 30 years, the trust therein created should continue until he attains that age and upon the attainment of the age of 30 years by the younger grandson, the trust principal was to be distributed to the two grandsons as tenants in common. Each trust provided that if, on the death of both the life tenants (the grantor and his daughter), either or both grandsons were deceased leaving lawful issue surviving, their issue would represent the deceased grandson. The trust of June 1, 1928, then provided that in the case of the death of both of the

---

the value of the property so transferred is includible without regard to the date when the transfer was made, whether before or after the enactment of the Revenue Act of 1916.

   \*       \*       \*       \*       \*       \*       \*

*Example (6)*. The decedent, during his life, transferred property in trust, providing that the income be accumulated and added to corpus until his death, and that the corpus be paid at decedent's death in equal shares to his surviving children. The share of any child who should predecease the decedent was to be paid to his issue, or, if no issue survived the decedent, to other children of the decedent or their issue. If no children and no issue of any child should survive the decedent, the corpus was to be paid to the next of kin of the decedent. It is assumed for the purposes of this example that the disposition to "the next of kin of the decedent" creates a remainder in the persons who at his death are his next of kin and not a reversion to the decedent's estate. In this case, the decedent has parted with every right and interest in the property and hence requirement (2) is not satisfied. Accordingly, no part of the property is includible in the decedent's gross estate under this section.

   \*       \*       \*       \*       \*       \*       \*

In the case of a decedent who died on or before January 17, 1949, the date of the decision of the United States Supreme Court in *Commissioner* v. *Estate of Francois L. Church,* 335 U. S. 632, property transferred by the decedent shall not be included in his gross estate under this section if the decedent's only right or interest in the property consisted of an estate for his life. (See, however, sections 81.18 and 81.19.)

two "grandsons *without leaving lawful issue surviving,*" the trust principal was to go "in absolute estate and in fee simple, one-fourth thereof unto Grantor's sister, Minnie Hibbs McClellan, *if living,* or if she be then deceased, *unto her issue, per stirpes;* and the remaining three-fourths thereof unto Grantor's sister, Blanche Hibbs Homiller, *if living,* or if she be then deceased, *unto her issue, per stirpes.*" [Emphasis added.] In the trust of November 20, 1928, there was no provision for Minnie Hibbs McClellan, that is, it provided that "In the case of the death of both of Grantor's said grandsons without leaving lawful issue surviving [the principal would go to] the issue, per stirpes, of Grantor's sister, Minnie Hibbs McClellan; * * *." Otherwise as to the remainders, the trusts were the same. It is the provision for the decedent's two sisters and their issue quoted above that appears to be the cause of the real difference between the parties.

It is assumed for argument that at the termination of the trust (the death of the life tenants), the grandsons, their issue, and the two sisters and their issue are all dead. The question then becomes—What would be the disposition of the corpora of the two trusts? The respondent contends that under local law [5] it would either revert to the decedent's estate or be held for it by resulting trust. The petitioners contend that there could be no reversion or resulting trust in the settlor because there is no requirement of survival embodied in the trusts as to the provision for the last-named remaindermen— the issue of the sisters. That is, that the trust provides as to each of the other preceding remaindermen that each would take only "if living" but that there is no such requirement as to the sisters' issue and, therefore, the *heirs* of the sisters' issue would receive the trust corpus. (Of course the sisters' issue may have issue, but the assumption is that there are no lineal descendants of such issue alive at the termination of the trust. Also, the decedent can not be an heir because by hypothesis he will be dead.) Stated yet another way, assuming any order of the beneficiaries' demise, the estates of those persons (the sisters' issue) who were not required to survive to take, would receive the corpus. The petitioners contend further that on the failure of such heirs beyond the statutory limit [6] the corpus would escheat to the state.

The arguments presented in their brief have carried the parties through much of the law of trusts and future interests but their real differences involve this question of survival. The respondent argues that there is a "connoted requirement of survival in the use of the word 'issue' [which] is ordinarily construed to be a basis for the de-

---

[5] Both trusts contained personalty. The trust of June 1, 1928, contained realty located in the State of Virginia and the decedent died a resident of the District of Columbia.
[6] The District of Columbia Code, section 18–717 (1940); Code of Virginia (1942), section 518.

feasance of the interest limited whereas the use of the words 'heirs' is construed as a condition precedent." Respondent relies on Comments *i* and *j* to Section 249. Restatement Of The Law Of Property.[7] Respondent argues further that "the language used in the gift over is in the disjunctive form 'or * * * unto her issue' [which] according to the Restatement Of The Law Of Property, Section 252,[8] tends to establish a requirement of survival to the end of all preceding interests, * * *."

The petitioners contend that Comments i and j to Section 249 of the Restatement Of The Law Of Property do not apply to the Hibbs transfers because the restatement rule refers to a limited situation in a jurisdiction where the fee tail estate has been abolished and converted into an estate for life in the first donee with remainder in fee to the issue, and that under the laws of the District of Columbia and the State of Virginia the fee tail estate has been abolished and a statutory fee simple created in the first taker. The petitioners further point out that Section 252 of the Restatement Of The Law Of Property does not apply to the transfers in the Hibbs trusts for the provisions there are not alternative, that is, there is no choice between the remaindermen *or* their issue, but rather, it is a supplanting limitation, that is, to one if living, but if deceased, then to the other.

---

[7] § 249. *Descriptive Term Connoting Survival.*

In a limitation purporting to create a remainder or an executory interest, a description of the intended takers either as "heirs," or as "heirs of the body," or as "next of kin," of a person not deceased, or by some other term similarly connoting a requirement of survival, tends to establish, as to each such remainder or executory interest sought to be created,

(a) that a requirement of survival exists; and

(b) that such survival is a condition precedent of such interest.

Comment i reads, in part, as follows:

*i. Analogous rule applicable to "issue" or "descendants."* The words "issue" or "descendants" are not "other terms similarly connoting a requirement of survival," within the meaning of that phrase as used in this Section. Nevertheless these words do normally connote a requirement of survival. The rule applicable to them is different from the rule stated in this Section in one major particular. The connoted requirement of survival is usually construed to be a basis for the defeasance of the interest limited and not to be a condition precedent thereof (see Comment *j*).

＊            ＊            ＊            ＊            ＊            ＊

Comment j reads as follows ·

*j. Application of the analogous rule stated in Comment i—Limitation of estate tail changed by statute to an estate for life and a remainder.* When a state has a statute which provides (see § 97) that a limitation formerly effective to create an estate in fee tail creates a remainder in fee simple absolute in the issue of the first donee in tail and creates in such first donee an estate for life only, then the rule stated in this Section applies to the statutory remainder created in the issue of the first donee, and each presumptive taker of such remainder, during the life of the first donee, has an interest vested subject to complete defeasance by his failure to survive the death of the first donee (see § 99, Comment *c*).

[8] § 252. *Alternative Limitation Employing the Word "or."*

In a limitation purporting to create a remainder or an executory interest, in "B or his children," or in "B or his issue," or in "B or his descendants," or by other language of similar import, the alternative form tends to establish as to the interest of B that

(a) a requirement of survival to the end of all preceding interests exists; and

(b) such survival is a condition precedent of such interest.

The petitioners contend that the respondent's argument to the effect that the words "issue" and "heirs" both have a connotation of survival, is in error because it is axiomatic that heirs can be ascertained only at the death of their ancestor but that a living person can have issue. It would appear to be correct, as the petitioners suggest, that there is no condition that issue must survive the life tenant so long as the persons constituting the issue can be ascertained, which they can, before the death of the life tenant, and that if there is one member of the class, "issue," alive during the term of the trust, which there was, the interest vests in the *class* subject to being opened up to admit other members regardless of the order of the other beneficiaries' demise. But the membership can not decrease because there is no survival requirement other than a substitution *per stirpes*. The petitioners are further supported by the view that, "Strictly there can never be a failure of next of kin, even though a failure to ascertain them may result in an escheat. For that reason it cannot be said * * * [that there was a retention] of any vestigial interest which his death terminated; * * *." *Commissioner* v. *Baynes Estate, et al.*, 155 Fed. (2d) 475.

The respondent points to the general rule dealing with resulting trusts in the Restatement Of The Law Of Trusts, Section 411 and Comment b thereof:

§ 411. General Rule.
Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality.

* * * * * * *

b. *Transfer inter vivos.* Where the owner of property gratuitously transfers it inter vivos upon a trust which fails, the transferee holds it upon a resulting trust for the transferor.

The above provision was relied on by the Circuit Court (159 Fed. (2d) 257) in the *Spiegel* case and respondent states that petitioners must contend with it here. Comment 1 of Section 411 of the Restatement Of The Law Of Trusts appears more like the Hibbs transfers and is relied on by petitioners. Comment 1, in part, is as follows:

Similarly, if the owner of property transfers it in trust for one beneficiary for life and another in remainder, and the latter has the entire beneficial interest in the trust property subject only to the life estate of the other beneficiary, and before the death of the life beneficiary, the beneficiary entitled in remainder dies intestate without heir or next of kin, his beneficial interest passes to the State, and no resulting trust arises in favor of the settlor or his estate. If, however, the interest of the beneficiary in remainder is contingent, and he dies intestate without heir or next of kin before it is vested, a resulting trust arises in favor of the settlor or his estate.

Further it appears correct, as petitioners contend, that although at common law, contingent remainders were not transmissible, this rule has been generally modified by statutes. 33 Am. Jur. 614–615.

The District of Columbia Code, Section 45–815 provides as follows:

Expectant estates shall be descendible, devisable and alienable in the same manner as estates in possession.

It also seems clear that under Sections 45–808 and 45–812 of that Code, contingent remainders are included in the definition of expectant estates.

Section 5147 of the Virginia Code provides in part that "Any interest in or claim to real estate may be disposed of by deed or will."

The petitioners quote from Fearne, Contingent Remainders, Vol. 1, page 363, as follows:

Another observation is, that a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chance to die before the contingency happens.

\* \* \* And in general, it seems that contingent interests passed to the real or personal representatives, according to the nature of such interest, as well as vested interests, so as to entitle such representatives to them when the contingencies occur.

Both parties seek support from a recent case in the United States Court of Appeals for the District of Columbia—*Scott* v. *Powell*, 182 Fed. (2d) 75. The respondent contends that there is an implication that the *Spiegel* decision would be the same under the law of the District of Columbia. This, however, is completely irrelevant for there is no factual parallelism between *Spiegel* and the instant case. *Scott* v. *Powell, supra,* is not a tax case. The question there concerned the disposition of the principal of a trust estate under the following provision quoted from the opinion:

Mrs. Garnett reserved from the general provision of her will certain real estate in the District of Columbia. She devised this real estate to a trustee, directing it to divide the net income arising therefrom equally among her three children, William, Evelyn and Rita, so long as they or any of them should live, with a survivorship provision as to any child dying without lineal descendants. The disposition of the principal upon the termination of the trust was as follows: "Upon the death of all of my children, I give, devise and bequeath all of my trust, estate, in fee simple, and free.of this trust, to my grandchildren, or their descendants that shall then be living, my said grandchildren, or their descendants to take per stirpes and not per capita, or in other words, to inherit the portion of my estate that would pass to their parents if I had died intestate." (This punctuation is precisely as in the original.) There was no other clause dispositive of this property.

The court considered the local law of future interests and concluded that the words "then \* \* \* living" applied to the sole grandchild as well as his descendants and since this grandchild died before the life tenants there was a reversion of his interest, that as to that

extent the grantor left herself intestate and the interest descended to her heirs at law. In arriving at that result the court considered the difference between an alternative limitation, (Restatement Of The Law Of Property, Section 252)[9] and a supplanting limitation (Restatement Of The Law Of Property, Section 253)[10] saying:

> From all the foregoing come the rules that in the absence of any named remainderman living at the expiration of the life estate, the property reverts in the case of an "alternative limitation"; and that in the case of a "supplanting limitation" the property passes to the heirs or devisees of the deceased remainderman. We must determine which type of limitation we have in the case at bar.

The court concluded, after considering the punctuation of the instrument, the intent of its creator and applying rules of construction, that they had before them an alternative limitation which gave rise to the reversion.

In the instant case the petitioners contend, and, we believe with considerable merit, that the Hibbs transfers are supplanting and not alternative limitations and it follows that if *Scott* v. *Powell*, *supra*, is correct, "the property passes to the heirs or devisees of the deceased remainderman."

In such a case as this our posture is much the same as a local court of equity in receipt of a request for instructions by the trustee as to the disposition of the corpus of this trust where all of the remaindermen have predeceased the life tenants, as stated in the hypothesis of the litigated question. It is our opinion that the decision of such a court sitting in either of the jurisdictions in which the property in this case is located, viz., the State of Virginia or the District of Columbia, would instruct the trustee to make a disposition of the property in accordance with the petitioners' argument as presented to us here. It will be conceded that the answer to the question is not as clear as might be desired but since the respondent has the burden of proof in these proceedings, the question having been raised in his affirmative pleadings, it is our opinion that he has not sustained the burden incumbent upon him to show that there was a possibility of reversion or a resulting trust in the grantor-decedent. In the *Spiegel* case, Mr. Justice Reed, concurring, said:

> From a reading of the trust instrument involved in the instant case, it is manifest that the settlor did not intend to grant his children the power to dispose of their respective shares should they predecease the settlor without issue. * * *

---

[9] See Footnote 8.

[10] § 253. Limitation Over on the Failure of a Prior Taker in Any and All Circumstances to Survive.

In a limitation purporting to create a remainder or an executory interest in a person, the inclusion of a supplanting limitation with respect to all failures of such person to survive to a future time, tends to establish that the requirement of survival so created is a basis for the defeasance of such interest rather than a condition precedent thereof.

There is, on the other hand, no such "manifest" interpretation of the instant case. As the cases citing *Helvering* v. *Fitch*, 309 U. S. 149, show, controversies growing out of interpretations of state law have been more concerned with the tax consequences of domestic relations questions than with similar consequences of the law of trusts and future interests. The Court said in the *Fitch* case, *supra*, that:

> Enough has been said to show that respondent has not sustained the burden of establishing that his case falls outside the general rule expressed in Douglas v. Willcuts, supra. If we were to conclude that this case is an exception to that rule we would be acting largely on conjecture as to Iowa law. That we cannot do. For if such a result is to obtain, it must be bottomed on clear and convincing proof, and not on mere inferences and vague conjectures, that local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent. * * *

This Court relied on the *Fitch* case, *supra*, in *Marguerite T. Payne*, 1 T. C. 360, affd., 141 Fed. (2d) 398, saying: "Thus, the burden of legal persuasion to satisfy us that the state law would so operate * * * has not been met. The absence of any such showing requires that the issue be determined in respondent's favor."

We cannot say that in this case the respondent, who had the burden, has shown us by *"clear and convincing proof"* that there would be a reversion or a resulting trust in the decedent's estate of the corpora of the trusts in issue had all the remaindermen predeceased the life tenants. It follows from our views set out above that the litigated question should be resolved in favor of the petitioners.

*Decisions will be entered under Rule 50.*