SHELDON TAUBER, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46837–46841, 49343.   Filed May 9, 1955.

---

[1] Proceedings of the following petitioners are consolidated herewith : Rose Tauber, Docket No. 46838 ; Celia Tauber, Docket No. 46839 ; Rudolf Tauber and Celia Tauber, Docket No. 46840 ; Sheldon Tauber and Myrtle Tauber, Docket No. 46841 ; and Rudolf Tauber, Docket No. 49343.

*Bernard A. Green, Esq.*, for the petitioners.
*William G. O'Neill, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The principal argument made by the Commissioner in this case is in support of his determination that the notes were actually evidence of capital contributions and the payments thereon were taxable dividends. He contends that the transfer of the assets and the receipt of the notes was not a sale, as the petitioners contend, but was a contribution of capital since otherwise there would have been capital of only $100 in relation to indebtedness of $209,453.38, in other words "thin" capital inadequate for the purposes of the business. It will be demonstrated that there was here no "thin" capitalization, although the importance of "thin" capitalization in this case is not readily apparent.

The four partners decided to incorporate their business in 1946 and adopted a plan for that purpose. They knew that the assets of their business were worth substantially more at that time than the value of assets shown on their books. They fully intended to transfer that excess value to the corporation as a part of the whole transaction. The partnership carried on its books at March 30, 1946, loans to the partners in the total amount of $187,361.79 which, if offset against the capital accounts of each partner carried on the books of the partnership, would reduce the latter to a total of $209,464.10, made up of unequal net amounts to which the four partners would have been entitled.

They decided to equalize this situation in connection with the creation of the corporation, and for that purpose subtracted the loans from the capital accounts and had the corporation issue its notes equal to the balance then remaining in the capital account of each partner. The transfer of all of the other assets after elimination of the loans to partners, to the corporation, as an integral part of the plan, had the intended effect of contributing to the actual capital of the corporation the excess of the actual value of the transferred assets over $209,464.10. The evidence shows that that excess was a substantial amount, prob-

ably in excess of $150,000. Thus, the initial capital of the corporation was not merely the $100 of cash paid in by the four individuals and shown as capital on the books of the corporation, but was a much larger amount not shown on its books which was nevertheless available as working capital. The total capital of the new corporation could not fairly be called "thin."

The intention was to have the corporation pay the equalizing notes within a relatively short time and it actually paid them, $116,520.92 within 1 year, $49,238.79 within 2 years, and the balance within 2½ years of the transfer of the business from the partnership to the corporation. Those payments made up for the fact that some partners had withdrawn or borrowed more from the partnership than others. The Commissioner does not suggest that the satisfaction of the debts or the earlier withdrawals were taxable transactions or that equalizing withdrawals would have been taxable transactions, and his argument that the equalizing payments were taxable as dividends, thus taxing the four partners in inverse proportion to their debt satisfactions and withdrawals, is not persuasive. The notes evidenced amounts owed and cannot be regarded as evidence of capital of the corporation. The facts in this case amply distinguish it from those cited by the Commissioner in which evidences of indebtedness issued by a corporation were held to be the equivalent of stock because of thin capitalization, that is, unreasonable disproportion between the amount of stock and the amount of other securities issued by a corporation for property.

The Commissioner is thus left with nothing to support the deficiencies which he determined. He argues, in that event, that there was an exchange which would have been within section 112 (b) (5) [1] except that property other than stock (notes) was received by the transferors and the resulting gain to the transferors is recognized for tax purposes under section 112 (c) (1) [2] to the extent of the value of the other property, the notes. He does not contend that the amounts are taxable on any other theory and the Court will consider no other. Counsel for the petitioners, by amendments at the hearing, substituted a new paragraph, 5 (r) of the petitions, claiming that assets of a value in excess of book value had been transferred to the corpora-

---

[1] Section 112 (b) (5) provides that "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

[2] Section 112 (c) (1) provides that if an exchange would be within the provisions of subsection (b) (5), if it were not for the fact that the property received in exchange consists not only of stock or securities of the corporation but also of other property, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the fair market value of such other property.

tion to give it capital in excess of the $100 paid in cash for shares, and counsel for the Commissioner stated that he had no objection to the amendments, would file denials, and would file amended answers to raise an alternative issue. The nature of his amendment was not clear, but the trial proceeded without objection. The actual amended answers were filed several days after the hearing and contained the following upon which the Commissioner relies to raise an alternative issue:

If it should be judicially determined that in 1946 the partnership assets were transferred to the corporation in exchange for the alleged "notes" plus stock and that the payments on the alleged "notes" did not constitute a distribution of income, contrary to respondent's determination, then a taxable exchange occurred in 1946 and any gain to petitioner from the transaction should be recognized in accordance with section 112 (c) of the Internal Revenue Code.

The Commissioner also moved, in those amended answers, for any increased deficiencies which might result under the alternative contention.

The Commissioner must properly plead and prove any such alternative issue as the one he has in mind, which is upon a new theory different from and inconsistent with his determination of the deficiencies. *Hull* v. *Commissioner*, 87 F. 2d 260; *Estate of William Beale Hibbs*, 16 T. C. 535 (1951); *John O. Fowler*, 40 B. T. A. 1293, reversed on another point (C. A. 6, June 25, 1941); *Constance McCormick, Executrix*, 38 B. T. A. 308 (1938); *Security First Nat. Bank of Los Angeles, Executor*, 36 B. T. A. 633 (1937), appeal to C. A. 9 dismissed 99 F. 2d 1000; Rule 32 of the Rules of Practice of the Tax Court of the United States. Both the pleadings and the brief of the Commissioner on this alternative point are superficial and inadequate. They do not state the facts necessary to make a case and, furthermore, the record does not disclose the required facts to justify the determination of any deficiencies on this new theory. For example, the Commissioner has failed to plead or prove that the stock issued to each partner was "substantially in proportion to his interest in the property prior to the exchange," the basis of each partner for gain in the transaction, and the amount of "any gain" realized.

The notes received by the petitioners were not "securities in such corporation" within the meaning of section 112 (b) (5), but could be "other property" within the meaning of section 112 (c) (1). The petitioners contend that section 112 (c) (1) does not apply because it was stipulated that the stock was issued for cash and the evidence shows that the assets were sold to the corporation in a separate transaction for no gain. The Commissioner, however, may properly regard the issuance of the stock and the transfer of the assets as integral parts of a single plan for income tax purposes, but nevertheless, he has failed

to sustain his burden of proof on this issue. Not only has he failed to show that the four individuals were entitled to share equally in the profits and assets of the partnership immediately prior to the transfer, but the evidence shows affirmatively that they neither shared equally in the profits nor had equal interests in the assets. The profits in which they were to share equally were after drawings of Rudolf and Sheldon in undisclosed amounts, the payment to Celia and Rose of 6 per cent of their original capital contribution, and the division of the first $15,000 of profits between Celia and Rose. The evidence proves that, aside from the unequal sharing of profits, the partners also had unequal interests in the transferred property "prior to the exchange." There is no evidence to show what the agreement of the partners was in regard to a division of the assets upon termination of the partnership, but the amending agreement of May 1, 1945, suggests that Celia and Rose were probably to have their original contributions returned to them before the remaining assets would be divided equally. Clearly the capital accounts of the four partners which equalled the book net worth as transferred were unequal "prior to the exchange" and the unequal notes were issued by the corporation for the express purpose of offsetting those unequal interests in the transferred assets. Thus the Commissioner has failed to show that the interests of the partners in the property prior to the exchange were substantially equal as required by section 112 (b) (5),[3] and the evidence of profit sharing and of interests in the property prior to the exchange indicate that they were unequal.

The Commissioner states that "Petitioners' basis * * * is the approximate figure of $209,000 (which represents the book value of the assets transferred)," and he concludes that the excess of the fair market value of the transferred asset over the value of the transferred assets shown on the books of the partnership was a gain. He does not go into detail to explain how that gain is to be allocated to each of the four individuals, but under his theory the basis of each partner for computing his gain on the transaction would be the $25 which he paid in to the corporation plus his adjusted basis for his interest in the portion of the partnership assets and business which was transferred to the corporation. The petitioners, in connection with their theory that they received the notes as purchase price for the sale of the assets, admit that their basis for computing gain in that sale exactly equalled the amount of the notes received by each, explaining that their capital accounts were created by leaving the distributable portions of the earn-

---

[3] Section 112 (b) (5) is an exception to the general rule of section 112 (a) that all gain from sales or exchanges is taxable, and it might be no comfort to a taxpayer that the relief given in (b) (5) does not apply in his case. Here, however, the Commissioner has not pleaded, proven or argued that the general rule of section 112 (a) applies and, as stated previously, the Court will not consider any question not properly before it.

ings of the partnership in the business. However, the Commissioner's theory is that they transferred their entire interests in the partnership, except for the loan accounts, in exchange for stock and notes. The record does not justify a finding, despite the noted admission, that the adjusted basis of each partner in the portion of his interest transferred was merely the net balance in his capital account on the books of the partnership. The evidence shows that those bases included additional amounts not reflected in the capital accounts. The original contributions of Celia and Rose were recognized as having values of $15,154.96 and $5,051.93 and must have had some basis. Value and basis are not synonymous. Celia, Rose, and Sheldon all agreed to purchase a part of Rudolf's original interest, but the record does not show the effect in dollars of those agreements upon the bases of the interest of each. It does not show what the original contributions of Rudolf and Sheldon were to the partnership or the cost or basis of any original contribution. Clearly the Commissioner has failed to show what the basis for any one of the partners was in computing any gain under section 111, if section 112 (c) (1) applies.

Reviewed by the Court.

*Decisions will be entered under Rule 50*

ARUNDELL and TIETJENS, *JJ.*, concur in the result.

OPPER, *J.*, dissents.