PHILLIP A. DIBBLE and PHYLLIS K. DIBBLE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Dibble v. Commissioner
Docket Nos. 14599-81, 14600-81, 14601-81, 26347-82, 26348-82, 26349-82.
United States Tax Court
T.C. Memo 1984-589; 1984 Tax Ct. Memo LEXIS 85; 49 T.C.M. (CCH) 32; T.C.M. (RIA) 84589; November 7, 1984. Paul A. Croake, for the petitioners. James M. Kline, for the respondent. COHEN MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: By statutory notices of deficiency respondent determined deficiencies in and additions to Federal income tax in these consolidated cases as follows: Taxable
Additions to Tax
Petitioner
Docket No.
Year
Deficiency
Sec. 6653(a) [2]
Phillip A. Dibble and
14599-81
1977
$20,953
$1,048
Phyllis K. Dibble
1978
44,991
2,247
26348-82
1979
75,873
William T. Brodhead
14601-81
1977
17,850
893
and Janet Brodhead
1978
35,974
1,799
26347-82
1976
6,034
1979
61,437
Louis C. Bernhardt and
14600-81
1977
24,455
1,223
Patricia W. Bernhardt
1978
42,061
2,103
26349-82
1976
4,826
1979
84,950
*87 By amended answers, respondent seeks increased deficiencies for the taxable periods indicated as follows: Taxable
Additions To Tax
Petitioner
Docket No.
Year
Deficiency
Sec. 6653(a)
Phillip A. Dibble and
14599-81
1977
$33,357
$1,443
Phyllis K. Dibble
1978
54,885
2,744
26348-82
1979
83,353
William T. Brodhead and
14601-81
1977
23,838
1,192
Janet Brodhead
1978
46,262
2,313
26347-82
1979
72,656
Louis C. Bernhardt and
14600-81
1977
30,698
1,535
Patricia W. Bernhardt
1978
51,546
2,577
26349-82
1979
101,414 After concessions, the issue remaining fordecision is whether the reported distribution of losses to petitioners as partners under the University Avenue Properties partnership agreement are special allocations that have no substantial economic effect within the meaning of section 704(b). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated *88 herein by this reference. Petitioners Phillip A. Dibble, Louis C. Bernhardt, and William T. Brodhead (hereinafter petitioners) were physicians at the Dean Clinic, S.C. in Madison, Wisconsin during the years in issue. Petitioners Phyllis K. Dibble, Patricia W. Bernhardt, and Janet Brodhead are parties to this proceeding solely because they filed joint returns with their husbands for the years in issue. Petitioners resided in Wisconsin at the time they filed their petitions herein. Petitione retained Byron L. Frenz (Frenz), a certified public accountant, to prepare their individual Federal income tax returns and to render tax and other financial advice during the years in issue. On December 1, 1976, Frenz organized University Avenue Properties (UAP), a Wisconsin limited partnership, to acquire certain commercial real estate in Madison, Wisconsin, from Hamilton Supply Co. UAP consisted of Frenz as general partner and petitioners Dibble, Bernhardt, and Brodhead as limited partners. Pursuant to the UAP agreement, Frenz contributed an option to purchase the Hamilton Supply Co. real estate improvements, while each of the doctors contributed $22,500 in cash on December 1, 1976, and *89 agreed to contribute an additional $22,500 in cash on April 1, 1977. Under the agreement, each partner, including Frenz, received an interest designated as a "25% Capital Account" in exchange for his initial capital contribution. The UAP agreement provided that all losses would be allocated among the limited partners on the basis of their paid capital accounts at the close of each calendar year, excluding any allocation to the general partner, and that net profits would be allocated 50 percent to the general partner and 16-2/3 percent to each limited partner. In addition, paragraph 5 of the agreement provided: 5. TIME WHEN CONTRIBUTIONOF LIMITED AND GENERAL PARTNER IS TO BE RETURNED. No time has been agreed upon when the contribution of the general partner and the limited partners is to be returned except, upon termination or dissolution of the partnership, the amount of capital contribution by each of the limited partners shall be returned to said limited partners, and an amount equal to the capital contribution of one of the three limited partners, shall be paid to the general partner. Any excess in assets shall be paid fifty (50) percent to the general partner, *90 and sixteen and two-thirds (16-2/3) percent to each of the limited partners. During 1977, 1978, and 1979, UAP was engaged in the trade or business of acquiring, improving, and leasing commercial real estate, including a 2-1/2-acre parcel upon which were situated two residential properties, a 15,000 square foot commercial structure (the shopping center building), and a building leased as a fast-food restaurant. This parcel was acquired from the Hamilton Supply Co. for $725,000 by another limited partnership formed by Frenz known as University-Hill Plaza (UHP). [3] Contemporaneously with this purchase, UHP executed a document entitled Purchase Contract that purported to transfer the improvements and underlying leases to UAP. [4] The contract between UHP and Hamilton Supply Co. contained the personal guarantees of petitioners Dibble, Brodhead, and Bernhardt for 75 percent of the unpaid principal and interest (limited to 25 percent each). *91 During the years in issue the shopping center building was leased to various retail tenants and the residential properties were leased to single family occupants. In 1978, the restaurant terminated its lease and in 1979, UAP demolished the building the restaurant had occupied. In 1979, UAP also remodeled and added a 15,000 square foot addition to the shopping center building. To fund the losses incurred by UAP during 1977 through 1979, petitioners executed "Additional Capital Contribution Agreements" on February 15, 1978, December 20, 1978, May 1, 1979, and December 15, 1979. [5] Frenz and petitioners made cash capital contributions to UAP during 1977 through 1979 as follows: Partner
1977
1978
1979
Total
For the Commission, by the Office of Public Utility Regulation, pursuant to delegated authority.
Frenz
Bernhardt
52,500
88,500
136,500
277,500
Brodhead
52,500
88,500
106,500
247,500
Dibble
75,000
88,500
106,500
270,000
Totals
$180,000
$265,500
$349,500
$795,000
In addition, during 1977 through 1979 petitioners assumed personal liability on debt of UAP totaling $1,534,832. *92 UAP reported gross revenues of $32,207 and deductions of $158,159, including $34,167 of depreciation, on its Form 1065 information return for 1977. For 1978, UAP reported gross revenues of $67,015 and deductions of $302,851, including $52,886 of depreciation. For 1979, UAP reported gross revenues of $56,152 and deductions of $502,749, including $64,116 of depreciation. UAP reported losses totaling $808,385 on its Form 1065 information returns for 1977, 1978, and 1979. All of the UAP losses were allocated to petitioners in proportion to their capital account balances at year end and claimed by petitioners on their individual income tax returns for 1977, 1978, and 1979. None were allocated to Frenz. Petitioners' capital accounts were charged with all losses. The year-end capital account balances of the partners for the years 1977 through 1979 as reported on UAP's Form 1065 for those years were as follows: Date
Frenz
Bernhardt
Brodhead
Dibble
12-31-77
$25,683
$25,683
$25,682
12-31-78
35,571
35,571
35,570
12-31-79
3,205
3,205
3,205
At the time of trial Frenz was adverse to petitioners. An action commenced by petitioners *93 against Frenz for money damages and an accounting of the financial affairs of UAP was pending in the Dane County Circuit Court. Frenz had filed bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code, and the assets of UAP had been distributed to BDB Investors, a Wisconsin general partnership consisting of petitioners Dibble, Brodhead, and Bernhardt. The parties settled all matters contained in the statutory notices of deficiency. In his amended answers, however, respondent alleged that the special allocation of losses under the UAP agreement did not have substantial economic effect; that all allocations of loss from UAP to petitioners for the years 1977, 1978, and 1979 should be disallowed; and that the amounts of deficiency should be increased accordingly. ULTIMATE FINDING OF FACT The special allocation to petitioners of all losses for 1977, 1978, and 1979 under the UAP agreement has substantial economic effect. OPINION Respondent first raised the special allocation issue by amended answers made upon leave granted by this Court under Rule 41(a), Tax Court Rules of Practice and Procedure. This constitutes new matter for which respondent *94 bears the burden of proof. Tauber v. Commissioner,24 T.C. 179 (1955); Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent concedes that he bears the burden of proof on this issue. Section 704(a) generally provides that a partner's share of income, gain, loss, deduction, or credit shall be determined by the partnership agreement. The general rule is limited, however, by section 704(b)(2), which provides that a special allocation provision will be disregarded if the allocation lacks substantial economic effect. If the specialallocation is disregarded, a partner's share of the item or deduction is determined in accordance with the partners' interest in the partnership, determined by taking into account all facts and circumstances. Sec. 704(b). The sole test after 1976 [6] under section 704(b) for determining the validity of partnership allocations is whether the allocation has "substantial economic effect." Goldfine v. Commissioner,80 T.C. 843, 851 (1983). *95 This test requires a determination of whether the partner to whom the item is specially allocated for tax purposes also bears the economic burdens and benefits of that specially allocated item. Allison v. United States,701 F.2d 933 (Fed. Cir. 1983); Hamilton v. United States,231 Ct. Cl. 517, 687 F.2d 408, 414, 417 (1982); Harris v. Commissioner,61 T.C. 770, 786 (1974); Orrisch v. Commissioner,55 T.C. 395, 403 (1970), affd. per curiam, an unreported opinion (9th Cir. 1973, 31 AFTR 2d 73-1069). If a partner's allocation of an item of income or deduction is reflected in his capital account and if the liquidation proceeds of the entity are distributed in accordance with the capital account balances, the allocation has substantial economic effect. Allison v. UnitedStates,supra.Moreover, where a partner's capital account registers a deficit, he must have the obligation upon liquidation to restore that deficit. Absent such an obligation, the other partner or partners would have to bear part of the economic cost of the special allocations that resulted in the deficit *96 capital account. Goldfine v. Commissioner,supra at 852; Harris v. Commissioner,supra at 786; Orrisch v. Commissioner,supra at 403-404. Respondent maintains that the special allocation of losses under the UAP agreement did not have substantial economic effect because under paragraph 5 of the partnership agreement, upon dissolution petitioners would receive the amount of their capital contributions made to the partnership without regard to their capital account balances at that time. Respondent further contends that if petitioners did not receive from the partnership an amount equal to their capital contributions, they would have a legally cognizable claim under state law against UAP and its general partner (Frenz). Respondent's interpretation of paragraph 5 of the UAP agreement and the general partnership laws of Wisconsin is unfounded in light of the evidence presented. *97 Respondent construes the following language of paragraph 5 as an express contractual guarantee by Frenz for the return of all capital contributions to petitioners upon liquidation, irrespective of the sufficiency of assets of the partnership at such time: No time has been agreed upon when the contribution of the general partner and the limited partners is to be returned except, upon termination or dissolution of the partnership, the amount of capital contribution by each of the limited partners shall be returned to said limited partners * * *. Respondent reasons that although petitioners' losses were reflected in their capital accounts, the lack of a requirement that the partners make up any deficits in capital accounts coupled with petitioners' expectation of full repayment of all capital contributions upon liquidation renders petitioners with no capital at economic risk in the venture.Accordingly, concludes respondent, the allocation of tax losses does not affect the dollar amount of a partner's share of partnership losses independently of tax consequences. The thrust of respondent's argument is that in the event of liquidation, the proceeds will not be distributed *98 according to the partner's capital accounts because the agreement, as interpreted by respondent, provides for the guaranteed return of capital contributions. Respondent contends that if there were insufficient funds at the time of liquidation to reimburse petitioners for their capital contributions, petitioners would have a claim against Frenz as general partner under general principles of contract law and under Wisconsin partnership law. Respondent asserts that Petitioners had no capital at economic risk and would suffer no economic burden in light of the guarantee. Respondent further argues that because a general partner is liable for the debts of the partnership, petitioners would have a claim against Frenz for the amount of their capital contributions. [7] Respondent contends that Frenz would suffer the economic burden if the partnership assets were sold for a sum less than the original cost, and, accordingly, Frenz, rather than petitioners, is entitled to the UAP losses. *99 Respondent acknowledges that there is no statutory requirement under Wisconsin law that a general partner must return a limited partner's capital contributions if there are insufficient assets to do so. Nor does there appear to be any authority for the proposition that the debts of a partnership include the guaranteed return of capital contributed by a limited partner. Furthermore, respondent has not persuaded us that paragraph 5 of the UAP agreement was an express contractual guarantee by the partnership for the return of petitioners' capital contributions. The language construed by respondent as an express contractual guarantee is only part of a sentence that also provides for the payment upon dissolution to the general partner of an amount equal to the capital contribution of one of the limited partners. Paragraph 5 makes further provision for the distribution of any excess in assets. We conclude that paragraph 5, when read as a whole, should be interpreted as simply a statement of the order of distribution of assets upon dissolution. [8]
*100 Respondent also argues that there is no evidence indicating that the return of capital was dependent upon there being sufficient capital in the partnership upon liquidation to pay petitioners for the amounts advanced. On the other hand, respondent has the burden of proof and the evidence in the record is insufficient to enable us to conclude that the provision expressly guaranteed the return of petitioner's capital upon liquidation "come what may" as asserted by respondent. It is undisputed that the special allocation of losses is reflected in petitioners' capital accounts. We must determine, therefore, whether upon liquidation the proceeds of the partnership would be distributed in accordance with the partners' capital account balances. The UAP agreement provided that upon dissolution, the limited partners would be entitled to a return of their capital contributions, the general partner would receive an amount equal to the capital contribution of one of the three limited partners, and "any excess in assets" would be paid 50 percent to the general partner and 16-2/3 percent to each of the limited partners. Although the agreement failed to provide for the *101 contingency of insufficient assets upon liquidation to satisfy the distribution set forth under the agreement, the provisions of the Wisconsin Uniform Limited Partnership Act would apply to require that liquidation distributions be made in accordance with capital account balances. [9] Thus, in either situation, upon liquidation the proceeds would be distributed in accordance with the partners' capital account balances. *102 In support of his argument that the special allocation does not affect the dollar amount of a partner's share of losses independently of tax consequences, respondent points to the fact that the UAP partnership agreement does not contain a requirement that a partner restore any deficit in his capital account. It is true the agreement does not provide for restoration of capital account deficits. The factual circumstances in the case now before us differ from those in Orrisch and Goldfine, however, where we held that where a partner's capital account registers a deficit, he must have the obligation upon liquidation to restore that deficit. Orrisch v. Commissioner,supra at 403-404; Goldfine v. Commissioner,supra at 852. In the instant case petitioners' capital accounts never registered a deficit during the years in issue. [10] Because petitioners maintained positive account balances, no partner would bear more than his share of the economic cost of the special allocation. The absence of an obligation upon liquidation to restore a deficit under the facts of this case is not fatal and does not invalidate the special *103 allocation. At trial petitioners moved to dismiss the special allocation issue raised in respondent's amended answer on the ground that respondent had failed to satisfy his burden of proof. We conclude there is no provision *104 under our Rules for their motion, and it is denied. We have considered the other arguments of all parties to this case and find them unpersuasive. In light of all the evidence, we have found as an ultimate fact that the special allocation of losses under the UAP agreement has substantial economic effect. Accordingly, petitioners are entitled to deduct their reported share of losses of UAP for the years 1977, 1978, and 1979. To reflect concessions by the parties and the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Louis C. Bernhardt and Patricia W. Bernhardt, docket No. 14600-81; William T. Brodhead and Janet Brodhead, docket No. 14601-81; William T. Brodhead and Janet Brodhead, docket No. 26347-82; Phillip A. Dibble and Phyllis K. Dibble, docket No. 26348-82; and Louis C. Bernhardt and Patricia W. Bernhardt, docket No. 26349-82.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. UHP was formed on May 31, 1977, and consisted of Frenz as general partner, and the Phillip A. Dibble Family Trust, Louis C. Bernhardt Family Trust, William T. Brodhead Family Trust, and Byron L. and Janet L. Frenz Family Trust as limited partners. Frenz was the trustee and the children of the individual named in the title of each trust were the beneficiaries of each trust. Also on May 31, 1977, Frenz formed another limited partnership known as Hill Street Properties (HSP) consisting of Frenz as general partner and petitioners Bernhardt and Broadhead as limited partners. At the time of trial, respondent withdrew the special allocation issue raised in his amended answers with respect to HSP. ↩
4. On August 15, 1977, UHP purchased a third residential property for $25,000 and contemporaneously executed a document entitled Purchase Contract that purported to transfer the improvements and underlying lease to UAP.↩
5. Frenz testified that the parties orally modified the UAP agreement on February 15, 1978, when petitioners agreed to make additional capital contributions. According to Frenz, under the agreement as modified, he would receive fees but not participate in any profits until the limited partners received their capital contributions. In view of Frenz's failure to present a clear picture of any oral modification and the lack of testimony by petitioners themselves on this issue, we are not persuaded that the agreement was modified as such.↩
6. Section 704 was amended by section 213(d), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1548. Section 704(b)↩, as amended, replaced the former "tax-avoidance or tax-evasion" test with the "substantial economic effect" test.
7. Respondent relies on section 178.12 of the Wisconsin Uniform Partnership Act and sections 179.09, 179.10, and 179.22 of the Wisconsin Uniform Limited Partnership Act in support of his argument. Sections 178.12, 179.09, 179.10 and 179.22, Wis. Stat. Ann. (West 1974) provide: 178.12 Liability of partners All partners are liable: (a) Jointly and severally for everything chargeable to the partnership under ss. 178.10 and 178.11; (b) jointly for all other debts and oligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract. * * * 179.09 Rights, powers and liabilities of a general partner A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, * * * [with exceptions not here pertinent]. * * * 179.10 Rights of a limited partner (1) A limited partner shall have the same rights as a general partner to (a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them, (b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable, and (c) Have dissolution and winding up by decree of court. (2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in ss. 179.15 and 179.16 * * * 179.22 Rights of creditors of limited partners (1) On due application to a court of competent jurisdiction by any judgment creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of the judgment debt; and may appoint a receiver, and make all other orders, directions, and inquiries which the circumstances of the case may require. (2) The interest may be redeemed with the separate property of any general partner, but may not be redeemed with partnership property. (3) The remedies conferred by sub. (1) shall not be deemed exclusive of others which may exist. (4) Nothing in this chapter shall be held to deprive a limited partner of his statutory exemption.↩
8. Sec. 179.10(2), Wis. Stat. Ann. (West 1974), provides that "[a] limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in ss. 179.15 and 179.16." Section 179.15. and the pertinent parts of section 179.16, Wis. Stat. Ann. (West 1974) provide: 179.15 Compensation of limited partner A limited partner may receive from the partnership the share of the profits or the compensation by way of income stipulated for in the certificate; provided, that after such payment is made, whether from the property of the partnership or that of a general partner, the partnership assets are in excess of all liabilities of the partnership except liabilities to limited partners on account of their contributions and to general partners. 179.16 Withdrawal or reduction of limited partner's contribution (1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until (a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid, or their remains property of the partnership sufficient to pay them, (b) The consent of all members is had, unless the return of the contribution may be rightfully demanded under sub. (2), and (c) The certificate is canceled or so amended as to set forth the withdrawal or reduction. (2) Subject to sub. (1) a limited partner may rightfully demand the return of his contribution (a) On the dissolution of a partnership, or (b) When the date specified in the certificate for its return has arrived, or (c) After he has given 6 months' notice in writing to all other members, if no time is specified in the certificate either for the return of the contribution or for the dissolution of the partnership.↩
9. Upon dissolution the assets of a limited partnership are distributed as provided by section 179.23, Wis. Stat. Ann. (West 1974): 179.23 Distribution of assets (1) In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order: (a) Those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners, (b) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions, (c) Those to limited partners in respect to the capital of their contributions, (d) Those to general partners other than for capital and profits, (e) Those to general partners in respect to profits, (f) Those to general partners in respect to capital. (2) Subject to any statement in the certificate or to subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims.↩
10. See sec. 1.704-1(b)(2)(ii), Prop. Income Tax Regs., 48 Fed. Reg. 9871 (1983), which provides in pertinent part: The determination of whether an allocation has economic effect is made as of the end of the partnership taxable year to which the allocation relates. Thus, the fact that a partner is not required to restore the deficit in his capital account * * * does not invalidate an allocation (or that portion of an allocation) to such partner to the extent the allocation does not create a deficit in such partner's capital account at the end of the partnership's taxable year provided the other requirements of this subdivision are satisfied. See also 2 A. Willis↩, J. Pennell, & P. Postlewaite, Partnership Taxation, secs. 86.05 to 86.06, at 86-8 to 86-12 (3d ed. 1982). W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 10.02[2][c], at 10-24 (1977); par. 10.01A[2][a], at S10-6 (1984 Supp.).