T.C. Memo. 2010-207

UNITED STATES TAX COURT

BILLY L. AND RENETTA J. EVANS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8309-08.          Filed September 22, 2010.

Ps granted two facade easements to a qualified
conservation organization and claimed a $154,350
charitable contribution deduction on their 2004 Federal
income tax return.  R determined a deficiency, in part,
on the basis that Ps overstated the amount of their
charitable contribution deduction, and R subsequently
asserted an accuracy-related penalty under sec. 6662,
I.R.C.

Held:  Ps are liable for the deficiency.

Held, further, Ps are not liable for that portion
of the accuracy-related penalty under sec. 6662,
I.R.C., that relates to the disallowed charitable
contribution deduction.

Billy L. Evans, for petitioners.

Jeffrey S. Luechtefeld and Robert Dillard, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge: In 2004 petitioners granted facade easements with respect to two properties in the Capitol Hill Historic District of Washington, D.C. They claimed a $154,350 charitable contribution deduction on their 2004 Federal income tax return for doing so. Respondent disallowed the deduction and determined a Federal income tax deficiency of $58,896 for 2004. This case is before the Court on a petition for redetermination of that deficiency. In addition, respondent affirmatively asserted in his June 3, 2008, answer that petitioners are also liable for an $11,779 accuracy-related penalty pursuant to section 6662(a) for 2004.[1] The issues for decision are whether petitioners are liable for (1) the Federal income tax deficiency and (2) the accuracy-related penalty.[2]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]On their 2004 Federal income tax return, petitioners also claimed a $137,172 nonpassive loss related to a broadcasting company that they partially own. Respondent determined that the loss was actually attributable to a passive activity and treated it as a passive activity loss. Petitioners concede that they did not materially participate in the broadcasting company in 2004,

(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings. At the time the petition was filed, petitioner Billy Evans resided in Florida and petitioner Renetta Evans resided in California. The parties have stipulated that the appropriate venue for any review of our decision in this matter will be the U.S. Court of Appeals for the Eleventh Circuit. See sec. 7482(b)(2); Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Petitioner Billy Evans purchased a single-family rowhouse in Washington, D.C., on December 29, 1995. Petitioners purchased another single-family rowhouse in Washington, D.C., on June 7,

---

[2](...continued)
as defined by sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). They indicated in their petition and in the stipulation of facts, however, that they sought to challenge the validity of the regulation. Despite being reminded at the end of the trial of the importance of briefing the purely legal validity issue, petitioners make no mention of it in their brief or reply brief. Accordingly, and without knowing the specifics of petitioners' validity argument, we deem it conceded. See Levin v. Commissioner, 87 T.C. 698, 722-723 (1986) (citing Rule 142(a) for the proposition that because "petitioners have made no argument with respect to * * * deductions claimed * * * [, they] are deemed to have conceded their nondeductibility"), affd. 832 F.2d 403 (7th Cir. 1987); Zimmerman v. Commissioner, 67 T.C. 94, 104 n.7 (1976) (noting "that petitioners alleged in their petition that their use of * * * [a particular] method in computing the depreciation deductions claimed on their returns was proper and that respondent erred in" disallowing these deductions. "However at trial and on brief they made no argument in this regard and we deem them to have conceded this issue.").

2004.  Both properties are in the Capitol Hill Historic District of Washington, D.C.  On December 29, 2004, petitioner Billy Evans executed two "Conservation Deed of Easement" documents and petitioner Renetta Evans executed one of the two "Conservation Deed of Easement" documents.  These documents were intended to grant facade easements to Capitol Historic Trust, Inc., with respect to the two properties.

On their joint 2004 Form 1040, U.S. Individual Income Tax Return, petitioners claimed a $154,350 charitable contribution deduction attributable to the facade easements.  Petitioners attached page 2 of two Forms 8283, Noncash Charitable Contributions, to their return.[3]  On January 10, 2008, respondent issued a notice of deficiency determining, inter alia, that the claimed $154,350 charitable contribution deduction was not allowable.  Petitioners filed a timely petition for redetermination of the deficiency on April 7, 2008.  A trial was held on January 14, 2009, in Tampa, Florida.  The parties submitted opening briefs and reply briefs.

---

[3]The two Forms 8283 showed appraised fair market values of $67,100 and $87,230, respectively, for the two facade easements, for a total of $154,330.  However, Item 16, Gifts to Charity, Other than by cash or check, of Schedule A, Itemized Deductions, to the Form 1040 showed a total of $154,350.  We surmise that the $20 discrepancy arose from an error in reading the handwritten figure of $87,230 on the second Form 8283 as $87,250 instead.

OPINION

I.  <u>Applicable Law</u>

Section 170 allows a deduction for a qualified conservation contribution that a taxpayer makes during the taxable year. Sec. 170(c), (f)(3)(B)(iii), (h).  The value of a qualified conservation contribution "is the fair market value of the perpetual conservation restriction at the time of the contribution."  Sec. 1.170A-14(h)(3)(i), Income Tax Regs.

Fair market value "is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  Sec. 1.170A-1(c)(2), Income Tax Regs.  Although the fair market value of a facade easement would ideally be based on the sale prices of comparable easements, sec. 1.170A-14(h)(3)(i), Income Tax Regs., such information is seldom available because conservation easements are typically granted by deed of gift rather than sold, <u>Symington v. Commissioner</u>, 87 T.C. 892, 895 (1986).  A common alternative is the before-and-after approach, which compares the fair market value of the easement-encumbered property before it is encumbered by the easement and after.  <u>Stanley Works & Subs. v. Commissioner</u>, 87 T.C. 389, 399 (1986); sec. 1.170A-14(h)(3)(i) and (ii), Income Tax Regs.

The parties dispute (1) whether the facade easements were qualified conservation contributions under section 170(h); (2) whether petitioners satisfied the substantiation requirement of section 170(f); and (3) what the fair market values of the facade easements were at the time of their contribution.

II.  Burden of Proof

Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed exemptions or deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Moreover, the Commissioner's determination of value is normally presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Schwab v. Commissioner, T.C. Memo. 1994-232.

Under section 7491(a), the burden may shift to the Commissioner with respect to factual matters if the taxpayer produces credible evidence and meets several other requirements. The Commissioner also bears the burden of proof with respect to any new matter that is not raised in the notice of deficiency but that either increases the original deficiency or requires the taxpayer to present different evidence.  See Rule 142(a); Shea v. Commissioner, 112 T.C. 183, 197 (1999); Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); see also sec. 7522.

Petitioners argue that the burden of proving the fair market values of the facade easements shifts to respondent under section 7491(a) because they presented credible evidence of the fair market values. As described below, however, petitioners failed to present credible evidence of fair market values. Accordingly, the burden of proof does not shift under section 7491(a).

Petitioners also argue that respondent bears the burden of proof with respect to the fair market values of the facade easements because respondent failed to raise the issue in the notice of deficiency. In the Explanation of Adjustments attached to the notice of deficiency, respondent stated: "It is determined that you did not establish that the amount of $154,350.00 was (a) a contribution, and (b) paid during taxable year 2004." Although respondent could have phrased his statement more explicitly, we find that the notice of deficiency adequately apprised petitioners that the amount of the claimed conservation contribution deduction was at issue. The burden of proof with respect to fair market values therefore remains with petitioners.

III. Values of the Facade Easements

Both parties have offered reports and testimony of expert witnesses to establish the amounts of petitioners' charitable contributions. An expert's opinions are admissible if they assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. We evaluate

expert opinions in light of each expert's demonstrated qualifications and all other evidence in the record.  See Parker v. Commissioner, 86 T.C. 547, 561 (1986).  Where experts offer competing estimates of fair market value, we determine how to weigh those estimates by, inter alia, examining the factors they considered in reaching their conclusions.  See Casey v. Commissioner, 38 T.C. 357, 381 (1962).  We are not bound by an expert's opinions and may accept or reject an expert opinion in full or in part in the exercise of sound judgment.  See Helvering v. Natl. Grocery Co., 304 U.S. 282, 295 (1938); Parker v. Commissioner, supra at 561-562.  We may also reach a determination of value based on our own examination of the evidence in the record.  Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285.

Petitioners called two expert witnesses:  Sandy L. Lassere, who prepared appraisal reports with respect to the facade easements, and Calvin Mark Lassere, who reviewed the reports.  Mrs. Lassere has a marketing degree from the University of Washington and is a certified residential appraiser in the District of Columbia and Virginia.  She testified that she has been appraising property for almost 10 years and that she has appraised upwards of 30 easements.  Mr. Lassere has a bachelor of science degree from Purdue University, is a certified general appraiser in the District of Columbia, and has other appraisal

licenses in Florida, Georgia, New York, North Carolina, Virginia, and Maryland. Mr. and Mrs. Lassere are coowners of CML & Associates, L.L.C., and serve as principal and president of the firm, respectively.

Mrs. Lassere claimed to have used both the comparable sales method and the before-and-after approach to value the facade easements.[4] On cross-examination, she admitted to a variety of

---

[4]Sec. 1.170A-14(h)(3)(i), Income Tax Regs., which authorizes the use of the before-and-after approach, provides in relevant part that

> If no substantial record of market-place sales is available to use as a meaningful or valid comparison, as a general rule (but not necessarily in all cases) the fair market value of a perpetual conservation restriction is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction. * * *

A cursory review of Mrs. Lassere's appraisal reports reveals that her so-called before-and-after analysis consisted merely of applying a percentage discount to the respective property's before-donation market value to account for the grant of the facade easement. We note that such a percentage discount of a property's before-donation market value without any analysis tying the percentage discount to the specific property involved may not constitute a before-and-after valuation under the regulations, but in the light of our ultimate holding in this case we need not pursue this any further. See Scheidelman v. Commissioner, T.C. Memo. 2010-151 (holding that the taxpayers "failed to comply with the substantiation requirements under section 170(f) and section 1.170A-13, Income Tax Regs." because the appraisal "report used only estimates based on prior cases and displayed no independent or reliable methodology applied to the subject property as the basis for the valuation reached"); cf. Simmons v. Commissioner, T.C. Memo. 2009-208 (holding that appraisals that included "discussions of IRS practice and cases

(continued...)

mistakes in her prepared reports, such as incorrectly describing the restrictions imposed by the easements,[5] making improper size adjustments with respect to sales of several comparable properties, and committing numerous miscalculations and spelling and other typographical errors.  Her testimony also cast doubt on the rigor and validity of her analysis.  For example, she did not adjust sale prices for amenities or garage parking, had difficulty explaining and justifying the adjustments she did make, and did not review the deeds of easement encumbering comparable properties.  In addition, Mrs. Lassere's testimony also implied, explicitly or implicitly, that she may have prepared the appraisal reports without having personally inspected the properties;[6] relied on an inspection by, at the

---

[4](...continued)
of this Court concerning facade easements" were nonetheless sufficient to satisfy "the substantiation requirements of section 170" because the appraisals also contained statistics gathered by the donee organization that the appraiser "took into account in preparing the appraisals. The appraisals likewise identify the method of valuation used and the basis for the valuations reached.").

[5]Though her report indicates that the facade easements prohibit "any extensions of improvements or erections of new or additional exterior improvements of the property", on cross-examination Mrs. Lassere acknowledged that this restriction applied only to that portion of the houses visible from the street and would not cover extensions or new improvements to the rear of the houses.

[6]Mrs. Lassere and Mr. Lassere apparently personally inspected the two houses after Dec. 9, 2008, although their written reports had apparently been prepared by, and were dated
(continued...)

time the properties were actually inspected, an unsupervised trainee appraiser; incorrectly indicated in the reports that it was she who had performed the interior inspection; and claimed in the reports that the conditions for a qualified conservation contribution had been satisfied though she failed to check these conditions.  In fact, Mrs. Lassere's testimony revealed that despite her expressed experience she was unfamiliar with the regulatory requirements that apply to an appraisal report prepared to support a facade easement donation.  Further, she used defined terms in her reports despite being unaware of their technical tax meaning and implications.

During her cross-examination, Mrs. Lassere was asked by respondent's counsel whether she was "familiar with the Internal Revenue Service's regulations regarding a qualified appraisal report".  She replied by stating:  "I'm not very familiar with it."  Respondent's counsel then pressed her and the following exchange ensued.

> Q:   If I were to tell you that one of the requirements of a qualified appraisal report is that it be made within a certain time period of the appraised donation, would that change your answer to it being a qualified appraisal report?
>
> A:   Would it change my answer?
>
> Q:   Yes.

---

[6](...continued)
Dec. 9, 2008.

A:   Well, this is a retrospective appraisal.

Q:   Right.  To be a qualified appraisal report, it has to be made within a certain time period.

A:   I understand that.

Q:   Is this appraisal made in the appropriate time period to be –

A:   Yes it is.

Q:   When was it made?

A:   It was made as of December 31, 2004.

Q:   When was the appraisal report made?

*     *     *     *     *     *     *

[A:] December 9, 2008.

Q:   That is almost four years after the date of the donation?

A:   That's correct.

Subsequently, during  Mrs. Lassere's cross-examination, respondent's counsel noted that "Your appraisal has the words 'qualified real property interest' in quotation marks" and asked her whether "those words mean something.  I'm asking what your understanding of that definition is?"  Mrs. Lassere admitted that her use of the defined term "qualified real property interest" in her appraisal reports "does not refer to the IRS.  It refers to the way in which I write or convey information."

Q:   Do you know that the words "qualified real property interest" is defined by the Internal Revenue Code?

A:   I don't have that definition here.

- 13 -

Q:   Are you aware that a qualified real property interest is a term defined by the Internal Revenue Code?

A:   I was not aware of that, no.

Q:   So its placement in your report does not mean a qualified real property interest within the meaning of the Internal Revenue Code?

A:   Obviously not, or I would have put the definition.

In the light of her admitted lack of familiarity with the requirements for a qualified appraisal report, her use of terms without an understanding of their exact meaning, and the various conceptual, methodological, and calculation errors that she acknowledged, we decline to give Mrs. Lassere's appraisal reports any probative weight, and we find that her conclusions regarding the fair market values of the facade easement lack credibility. Although Mr. Lassere testified at trial, he was not asked any substantive questions by either party regarding the facade easements' fair market values.

Petitioners also attempt to prove the fair market values of the easements through two other appraisal reports, each of which indicates that it was prepared by Douglas K. Wood under the supervision of John R. Keegan. The two reports bear signature dates of January 6 and 7, 2005, respectively, indicating that both reports had been prepared before petitioners filed their 2004 income tax return. Petitioners presumably relied on these

reports to complete Part III of their Forms 8283 and Mr. Wood has signed Part III, Declaration of Appraiser, of each Form 8283.[7]

Petitioners, however, did not call either Mr. Wood or Mr. Keegan, the identified authors of these reports, to testify at trial. Accordingly, these reports are inadmissible as evidence of the fair market values of the facade easements. See Van Der Aa Invs., Inc. v. Commissioner, 125 T.C. 1, 6-7 (2005) (indicating that an appraisal report would be inadmissible as evidence of fair market value if the author did not testify and make himself available for cross-examination); Droz v. Commissioner, T.C. Memo. 1996-81 (refusing to accept an appraisal report attached to a Federal income tax return where the author

_____

[7]Mr. Wood's signature on both Forms 8283 bears a date of of Jan. 5, 2005, a date before either of the two appraisal reports was signed. Whether or not this fact has any impact on the validity of the respective Form 8283 as an "appraisal summary", as defined in sec. 170A-13(c)(4), Income Tax Regs., is moot in this case because we hold the appraisal reports inadmissible for purposes of establishing the fair market value of the facade easements and sustain respondent's disallowance of the entire amount of the claimed charitable contribution deduction. Further, the fact that the signature date on the Forms 8283 precedes those of the appraisal reports does not affect our consideration of whether to accept the latter as a "qualified appraisal", as defined in sec. 1.170A-13(c)(3), Income Tax Regs. As explained infra note 13 and accompanying text, the appraisal reports were attached as exhibits to the stipulation of facts for the purpose of determining whether they constituted qualified appraisals under sec. 1.170A-13(c)(3), Income Tax Regs., and the parties have stipulated that petitioners obtained these reports on their respective signature dates, each of which was before petitioners filed their 2004 income tax return. Also, respondent has acknowledged that these reports meet the timing requirement for a qualified appraisal specified in sec. 1.170A-13(c)(3)(iv)(B), Income Tax Regs.

was not called as a witness at trial and was therefore not available to be cross-examined about his qualifications and methodology).[8]

We note that ordinarily any encumbrance on real property, howsoever slight, would tend to have some negative effect on that property's fair market value. Even a nominal encumbrance that is placed by the current owner of the property would, at the very least, deprive a subsequent owner of the opportunity of placing a similar encumbrance on that property. However, petitioners have failed to provide sufficient credible evidence with respect to the fair market values of the facade easements to meet their burden of sustaining their claimed charitable contribution deduction.

Respondent disallowed the entire amount of petitioner's claimed deduction, and the burden was on petitioners to show that this disallowance was in error. See Rule 142(a) ("The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court"); Welch v. Helvering, 290 U.S. at 115 (the Commissioner's "ruling has the support of a

---

[8]Petitioners also point to (1) an excerpt from an Internal Revenue Service Topical Tax Brief, entitled "Facade Easement Contributions" and (2) an excerpt from an Internal Revenue Service "Market Segment Specialization Program Audit Technique Guide" related to the rehabilitation tax credit. Even assuming petitioners could rely on such documents, they do not relate specifically to petitioners' facade easements and are therefore inadequate evidence of fair market value.

presumption of correctness, and the petitioner has the burden of proving it to be wrong"); see also <u>Anselmo v. Commissioner</u>, 757 F.2d 1208, 1210-1211 (11th Cir. 1985) (taxpayer had the burden of proving that the valuation of donated property should have been higher than that stated in the notice of deficiency), affg. 80 T.C. 872 (1983); <u>Philippi v. Commissioner</u>, T.C. Memo. 2003-257 (taxpayer failed to carry his burden of establishing he would be entitled to disallowed deductions, since his testimony was not reliable, and no exhibits on which he relied supported his position with respect to his claimed deductions).  Because petitioners have failed to meet their burden of proof, they are not entitled to any deduction.[9]

IV.  <u>Accuracy-Related Penalty</u>

Respondent asserted in his June 3, 2008, answer that petitioners were liable for an $11,779 accuracy-related penalty under section 6662(a).[10]  Section 6662(a) imposes an accuracy-

---

[9]In the light of this finding, we need not address the other issues addressed by the parties.  We also need not address respondent's motion at trial to strike certain pages from Mrs. Lassere's appraisal reports on the grounds that she was not the author of those pages.

[10]Our discussion below relates only to so much of the $11,779 accuracy-related penalty as pertains to that portion of petitioners' determined deficiency of $58,896 that arises from the disallowance of the claimed $154,350 charitable contribution deduction.  As discussed <u>supra</u> note 2, we deem petitioners to have conceded the claimed $137,172 nonpassive loss related to a broadcasting company that they partially own.  Therefore, the portion of the $58,896 determined deficiency, along with the

(continued...)

related penalty of 20 percent of any underpayment that is attributable to one of the causes listed in subsection (b). One such cause is any substantial understatement of income tax, defined for individuals as an understatement (with certain exceptions under section 6662(d)(2)(B) not applicable here) that exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(b)(2), (d)(1)(A).

A. Burden of Proof

Under section 7491(c), respondent bears the burden of production with respect to petitioners' liability for the section 6662(a) penalty. Generally, this means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Petitioners' understatement of income tax for their 2004 tax year is substantial under section 6662(d)(1)(A) because it exceeds $5,000 and is greater than 10 percent of the amount required to be shown on their return. Respondent has therefore satisfied his burden of production with respect to the section 6662(a) penalty.[11]

---

[10](...continued) associated accuracy-related penalty, if any, that is attributable to the claimed $137,172 nonpassive loss is also deemed conceded.

[11]The amount of the understatement under sec. 6662(d)(2)(A) is to be reduced by that portion of the understatement which is
(continued...)

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).  Regulations promulgated under section 6664(c) provide further that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances."  Sec. 1.6664-4(b)(1), Income Tax Regs.  Notably, pursuant to section 6664(c)(2), there may be reasonable cause and good faith in the case of any underpayment "attributable to a substantial or gross valuation over statement * * * with respect

---

11(...continued)
attributable to (1) "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment", sec. 6662(d)(2)(B)(i), or (2) any item if (a) "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return", sec. 6662(d)(2)(B)(ii)(I), and (b) "there is a reasonable basis for the tax treatment of such item by the taxpayer", sec. 6662(d)(2)(B)(ii)(II).  For purposes of satisfying his burden of production for the sec. 6662(a) accuracy-related penalty, the Commissioner is not generally obligated to show why the penalty should be imposed on the entire amount of the understatement and why no part of the understatement should be reduced under sec. 6662(d)(2)(B).  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  However, here, since respondent also bears the burden of proof, and therefore the ultimate burden of persuasion, for the sec. 6662(a) accuracy-related penalty, it could be argued that respondent is indeed obligated to establish, by a preponderance of the evidence, unless a higher evidentiary standard applies, that no reduction is warranted under sec. 6662(d)(2)(B).  But we decline to pursue this point any further because we hold below that petitioners have satisfied the requirements of the reasonable cause and good faith exception of sec. 6664(c) to the sec. 6662(a) penalty.

to charitable deduction property * * * [only if] the claimed value of the property was based on a qualified appraisal made by a qualified appraiser," where the terms "qualified appraisal" and "qualified appraiser" have the meanings ascribed to them in section 1.170A-13(c)(3) and (5), Income Tax Regs., respectively. See also section 1.6664-4(h), Income Tax Regs.

We note that disallowance of the entire amount of petitioners' claimed facade easement charitable contribution deduction results in a substantial or gross valuation misstatement under section 6662(e) or (h), respectively, with respect to charitable deduction property, and consequently section 6664(c)(2) requires that petitioners have obtained a qualified appraisal before claiming the deduction in order to be eligible for the reasonable cause and good faith exception to the accuracy-related penalty under section 6662(a).

Since respondent asserted the section 6662(a) penalty in his answer and not in the notice of deficiency, respondent bears the burden not only of production but also of proof with respect to that penalty. See Rule 142(a)(1) ("The burden of proof shall be upon the petitioner, except * * * that, in respect of any new matter * * *, it shall be upon the respondent."). We have long recognized that when the Commissioner does not determine an addition to tax or penalty in the notice of deficiency but asserts one in his answer, he "has introduced a 'new matter' on

which he bears the burden of proof." Sanderling, Inc. v. Commissioner, 66 T.C. 743, 758 (1976) (citing McSpadden v. Commissioner, 50 T.C. 478 (1968), Papineau v. Commissioner, 28 T.C. 54 (1957), Tauber v. Commissioner, 24 T.C. 179 (1955), and Estate of Falese v. Commissioner, 58 T.C. 895 (1972)), affd. in part and revd. in part on other grounds 571 F.2d 174 (3d Cir. 1978); see also Gagliardi v. Commissioner, T.C. Memo. 2008-10; Bhattacharyya v. Commissioner, T.C. Memo. 2007-19, affd. 357 Fed. Appx. 934 (9th Cir. 2009); Lenihan v. Commissioner, T.C. Memo. 2006-259, affd. 296 Fed. Appx. 160 (2d Cir. 2008); Snyder v. Commissioner, T.C. Memo. 2006-92; Paleveda v. Commissioner, T.C. Memo. 1997-416, affd. without published opinion 178 F.3d 1303 (11th Cir. 1999).

Examining the record before us, and for the reasons discussed below, we conclude that petitioners have made a sufficient showing of reasonable cause and good faith that respondent has failed to rebut. Therefore, the exception under section 6664(c) applies and petitioners are not liable for the section 6662 accuracy-related penalty. See sec. 1.6664-4(b)(1), Income Tax Regs.

B. Section 6664(c)(2) Qualified Appraisal Requirement

We begin with the requirement under section 6664(c)(2) of a qualified appraisal made by a qualified appraiser, as defined by section 1.170A-13(c)(3) and (5), Income Tax Regs., respectively.

This requirement applies to petitioners since our disallowance of the entire amount of their claimed facade easement charitable contribution deduction results in a substantial or gross valuation misstatement under section 6662(e) or (h), respectively, with respect to charitable deduction property. Consequently, under section 6664(c)(2), petitioners may not claim the reasonable cause exception of section 6664(c) to an accuracy-related penalty under section 6662(a) unless "the claimed value of the property was based on a qualified appraisal made by a qualified appraiser". Sec. 6664(c)(2).

Mrs. Lassere's appraisal reports that were signed December 9, 2008, could not have been "received by the donor before the due date * * * of the return on which a deduction is first claimed" and, therefore, pursuant to section 1.170A-13(c)(3)(iv)(B), Income Tax Regs., cannot constitute a qualified appraisal.

As we have noted above, in addition to Mrs. Lassere's appraisal reports, petitioners also attempted to prove the fair market values of the easements through two written appraisal reports, each prepared by Mr. Wood under the supervision of Mr. Keegan. And as we concluded above, petitioners' failure to call either of the two signatories of these reports to testify at trial precludes us from considering these reports as evidence of the fair market values of the facade easements. We arrived at

this conclusion because petitioners bear the burden of proof for their claimed deductions and, therefore, for establishing the fair market values of the facade easements by a preponderance of the evidence. Petitioners' failure to call the two signatories of these reports to testify at trial prevented them from meeting this evidentiary standard and satisfying their burden of proof. However, we do not believe that the lack of trial testimony by Messrs. Wood and Keegan prevents us from determining whether their appraisal reports constitute a qualified appraisal under section 1.170A-13(c)(3), Income Tax Regs.[12]

---

[12]A qualified appraisal under sec. 1.170A-13(c)(3), Income Tax Regs., is a necessary but not a sufficient condition for purposes of both satisfying the substantiation requirement of sec. 170(f) and invoking the reasonable cause and good faith exception of sec. 6664(c)(2). Had we found Mrs. Lassere's trial testimony credible and accepted her appraisal reports as conclusive evidence of petitioners' claimed fair market values of the facade easements, we would have been confronted with deciding whether to accept Messrs. Wood and Keegan's appraisal reports as a qualified appraisal for purposes of satisfying the substantiation requirement of sec. 170(f) since Mrs. Lassere's appraisal reports, which were prepared in anticipation of trial, could not constitute a qualified appraisal pursuant to sec. 1.170A-13(c)(3)(iv)(B), Income Tax Regs. See also Turner v. Commissioner, 126 T.C. 299, 321 (2006). In the light of our finding that Mrs. Lassere's appraisal reports do not have any probative weight, we need not, and therefore do not, make the decision regarding whether Messrs. Wood and Keegan's appraisal reports would constitute a qualified appraisal for satisfying the substantiation requirement of sec. 170(f). We note, however, that such a decision could have been affected by the fact that petitioners bear the burden of proof for sustaining their claimed deduction. Further, we do not believe that the absence of Messrs. Wood and Keegan's trial testimony would have precluded us from making this decision.

We make this determination, in this as in any other case, by applying the technical requirements of section 1.170A-13(c)(3), Income Tax Regs., to the written appraisal reports submitted to us.

Messrs. Wood and Keegan's reports were attached as exhibits to the stipulation of facts "for the purpose of the Court determining whether the * * * [reports satisfy] the requirements of a qualified appraisal under Treas. Reg. § 1.170A-13(c)(3)", and, by implication and to the extent applicable, under section 1.170A-13(c)(5), Income Tax Regs. Thus, in making this determination, we do not confront any issues of admissibility of evidence.

The two reports bear signature dates of January 6 and 7, 2005, respectively, and the parties have stipulated that petitioners obtained these reports on those dates, each of which was before petitioners filed their 2004 income tax return. Consequently, it is undisputed that the reports meet the timing requirement for a qualified appraisal specified in section 1.170A-13(c)(3)(iv)(B), Income Tax Regs.[13]

Respondent argues that the reports fail to meet the requirements of "Treas. Reg. § 1.170A-13(c)(3)(ii)(F) [which]

_____

[13]Respondent acknowledges as much in his posttrial reply brief when he states that "Respondent does not contend that the Wood/Keegan reports were not timely as required by § 1.170A-13(c)(3)(i)(A)", which, in turn, refers to sec. 1.170A-13(c)(3)(iv)(B), Income Tax Regs.

requires that the appraisal include the qualifications of the qualified appraiser who signs the appraisal, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations. This information is not contained in the Wood/Keegan reports." As a result, "Respondent has no information as to whether the Wood/Keegan reports were prepared by persons meeting the requirements to be a 'qualified appraiser' under Treas. Reg. § 1.170A-13(c)(5) because the Wood/Keegan reports do not contain the qualifications of the appraisers." Pointing out that "neither Wood nor Keegan testified at trial to allow the Court to ascertain their qualifications", respondent urges us to draw a negative inference from this omission. We decline to do so, at least for accepting Messrs. Wood and Keegan's reports as a qualified appraisal for purposes of section 6664(c)(2). We point out to respondent that as the party bearing the burden of proof and the ultimate burden of persuasion for the section 6662(a) accuracy-related penalty, respondent was free to call either or both Mr. Wood and Mr. Keegan as witnesses and question them on the adequacy of their respective qualifications. Since respondent chose not to do so, we cannot grant him the benefit of the doubt on this issue.

We also disagree with respondent's argument that "The mere statement of licensure is not a recitation of the appraisers' qualifications." We take judicial notice of the regulations

governing education and experience requirements in order to be licensed as a residential real estate appraiser in the District of Columbia promulgated by the Department of Consumer and Regulatory Affairs of the District of Columbia pursuant to authority under D.C. Code sec. 47-2853.10(a)(12) (LexisNexis 2007) and Mayor's Order 2000-70, dated May 2, 2000.[14]  Their

---

[14]A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding, whether or not the notice is requested by the parties.  See Fed. R. Evid. 201(c), (f); see also United States v. Harris, 331 F.2d 600, 601 (6th Cir. 1964) (explaining that a court may take judicial notice sua sponte).  In general, the court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Information posted on the official Web site of a government agency may be appropriate for judicial notice.  See, e.g., Marshek v. Eichenlaub, 266 Fed. Appx. 392 (6th Cir. 2008) (holding that the court is permitted to take judicial notice, sua sponte and at the appeals stage, of information on the Inmate Locator, which enables the public to track the location of Federal inmates and is maintained by the Federal Bureau of Prisons and is accessed through the agency's Web site, to discover that appellant has been released since the filing of his appeal and conclude that there remains no actual injury which the court could redress with a favorable decision and, thus, dismiss the appeal as moot); Denius v. Dunlap, 330 F.3d 919, 926-927 (7th Cir. 2003) (holding that District Court erred when it refused to take judicial notice of information on official Web site of a Federal agency that maintained medical records on retired military personnel; that fact was appropriate for judicial notice because it is not subject to reasonable dispute); Protect Lake Pleasant, LLC v. McDonald, 609 F. Supp. 2d 895, 922 n.13 (D. Ariz. 2009) ("Plaintiffs place a great deal of credence in * * * [Federal agency's] website * * * but they did not request that the court take judicial notice of that website.  In the exercise of its discretion, however, as Fed. R. Evid. 201(c) allows, the court will take judicial notice of * * * [that] website").

Federal courts have, under the authority of Fed. R. Evid. 201(c), taken sua sponte judicial notice of adjudicative facts by

(continued...)

"reports recite both Wood's and Keegan's state license number and the expiration dates".  Thus, respondent was put on notice that, at the very least, Mr. Wood and Mr. Keegan had each satisfied the applicable prelicensure education and experience requirements before being licensed as a residential real estate appraiser in the District of Columbia.[15]

---

[14](...continued)
accessing information not just on Federal governmental agency Web sites but also on the Web sites of bar associations and that of at least one private sector organization, the Financial Accounting Standards Board (FASB), which describes itself as "the designated organization in the private sector for establishing standards of financial accounting that govern the preparation of financial reports by nongovernmental entities."  See Jeffrey M. Goldberg & Associates, Ltd. v. Holstein, 299 Bankr. 211, 233 n.26 (Bankr. N.D. Ill. 2003) (the court took sua sponte judicial notice of the fact that debtor "was admitted to practice law in Illinois in 1962" by looking up his record on the Attorney Registration and Disciplinary Commission, an administrative agency of the Supreme Court of Illinois), affd. per opinion and order (N.D. Ill., Aug. 27, 2004); In re Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534, 561 n.18 (N.D. Cal. 2009) ("Surprisingly, neither side offered the FASB concepts at issue for judicial notice, but because the concepts are publicly available from the FASB's website, this order nevertheless takes judicial notice of FASB Statement of Financial Accounting Concept No. 1 pursuant to FRE 201.").

[15]The regulations of the Department of Consumer and Regulatory Affairs of the District of Columbia require applicants for the Licensed Residential Real Property Appraiser classification, the classification that each of Messrs. Wood and Keegan held as of the time they performed the appraisal, to have completed "one hundred fifty (150) classroom hours in subjects related to real estate appraisal" and "two thousand (2000) hours of appraisal experience obtained in no fewer than twelve (12) months."  And though either or both Messrs. Wood and Keegan might have obtained their District of Columbia license through reciprocity by virtue of being "licensed or certified and in good standing under the laws of another State or U.S. territory", the
(continued...)

Further, we note that in <u>Bond v. Commissioner</u>, 100 T.C. 32,
42 (1993), we had, under the doctrine of substantial compliance,
excused the omission "of the excellent qualifications of the
appraiser".  We did this since "the name, title, and place of
employment of the appraiser * * * appeared on the Form 8283
together with the identification number assigned to his employer
by respondent" and accepted the Form 8283 as evidence of a
qualified appraisal for purposes of the substantiation
requirement for a charitable contribution deduction under section
170(f).  We have, therefore, concluded that the omission of a
narration of qualifications can be excused for purposes of
substantiating the fair market value of a charitable contribution
deduction under section 170(f).  It surely follows that such an
omission can be excused for purposes of determining whether
petitioners qualify for the section 6664(c) reasonable cause and
good faith exception to a section 6662(a) accuracy-related
penalty for which respondent bears the burden of proof.

Respondent also makes broad attacks against the content,
analysis and conclusions of Messrs. Wood and Keegan's reports.
Respondent faults the reports for several alleged failures to
conform to the requirements of an appraisal report specified in

---

[15](...continued)
District of Columbia regulations extend such reciprocity only to
jurisdictions "with requirements that are substantially
equivalent to the requirements of this chapter", which include
the education and experience requirements mentioned above.

section 1.170A-13(c)(3), Income Tax Regs., contending, amongst other things, that these "reports fail to provide an adequate description of the property contributed"; that they "fail to identify the method of valuation used to determine the fair market value of the Easements"; and that they "fail to describe the specific basis for valuation." Our examination of these reports reveals that the appraisers describe in general terms the nature of the facade easement contributions, underscore the preferability of valuing these easements "based on comparable sales" and note "that data for such a derivation is extremely limited at this time." The reports then undertake an analysis that resembles on its face the before-and-after approach authorized by section 1.170A-14(h)(3)(i), Income Tax Regs.

Respondent, in both his opening and answering posttrial briefs, argues that neither report contains any meaningful explanation for the valuation arrived at and each appears to use an 11-percent discount applied to the before-donation market value. Respondent claims that this percentage discount factor is derived from amounts allowed in other litigated tax cases but is not directly associated with the properties at issue here. If so, then such a percentage discount of the before-donation market value unaccompanied by "a recognized methodology or specific basis for the calculated after-donation value * * * [would be] too significant for us to ignore" for purposes of accepting these

reports "as a qualified appraisal complying with the substantiation requirements of section 170." Scheidelman v. Commissioner, T.C. Memo. 2010-151.

However, respondent's claims attacking the reports' methodology, which he advances in his posttrial briefs, do not constitute evidence. See Rule 143(b). We note again that respondent could have called Mr. Wood and Mr. Keegan as witnesses and questioned them on the methodology or specific basis of valuation that they had employed in their reports. In Scheidelman, for example, the testimony of the expert, quoted in that opinion, confirmed the inference drawn from the written report about the lack of adequate methodology and analysis underlying the expert's conclusion regarding the fair market value of the claimed charitable contribution deduction. Alternatively, or in addition to calling the appraisers, respondent could have introduced other evidence to support his claims that Messrs. Wood and Keegan's reports failed to satisfy specific provisions of section 1.170A-13(c)(3), Income Tax Regs.

Respondent chose to do neither and has, consequently, failed to carry his burden of establishing that petitioners' claimed charitable contribution deduction was not based on a qualified appraisal made by a qualified appraiser. We therefore accept Messrs. Wood and Keegan's reports as a qualified appraisal and hold that petitioners have complied with section 6664(c)(2).

C. Reasonable Cause and Good Faith Under Section 6664(c)(1)

We now turn to the requirement under section 6664(c)(1) "that there was a reasonable cause * * * and that the [taxpayers] acted in good faith" in claiming the charitable contribution deduction.[16] We decide "whether a taxpayer acted with reasonable cause and in good faith * * * on a case-by-case basis, taking into account all of the pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on professional advice may constitute reasonable cause and good faith, but "it must be established that the reliance was reasonable." Freytag v. Commissioner, 89 T.C. 849,

_____

[16]Since the disallowance of the entire amount of petitioners' claimed facade easement charitable contribution deduction results in a substantial or gross valuation misstatement under sec. 6662(e) or (h), respectively, with respect to charitable deduction property, sec. 6664(c)(2)(B) imposes the additional requirement that the taxpayers "have made a good faith investigation of the value of the contributed property." As we hold below, petitioners have satisfied the general reasonable cause and good faith requirement of sec. 6664(c)(1) by showing that they had reasonably and in good faith relied on Messrs. Wood and Keegan, whom they had commissioned to conduct an appraisal of the facade easements. In doing so, petitioners had axiomatically caused to be made, on their behalf and in good faith, an investigation of the value of the contributed property. Thus, in petitioners' case, the good faith investigation requirement of sec. 6664(c)(2)(B) is subsumed under the general reasonable cause and good faith requirement of sec. 6664(c)(1). Consequently, our analysis of petitioners' satisfaction of the requirements of sec. 6664(c)(1) extends to and includes the good faith investigation requirement of sec. 6664(c)(2)(B).

888 (1987), affd. on another issue 904 F.2d 1011 (5th Cir. 1990),

affd. 501 U.S. 868 (1991); sec. 1.6664-4(b)(1), Income Tax Regs.

> In sum, for a taxpayer to rely reasonably upon advice
> so as possibly to negate a section 6662(a)
> accuracy-related penalty determined by the
> Commissioner, the taxpayer must prove * * * that the
> taxpayer meets each requirement of the following
> three-prong test: (1) The adviser was a competent
> professional who had sufficient expertise to justify
> reliance, (2) the taxpayer provided necessary and
> accurate information to the adviser, and (3) the
> taxpayer actually relied in good faith on the adviser's
> judgment. * * *

Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99,

affd. 299 F.3d 221 (3d Cir. 2002).  Further, "reliance may not be

reasonable or in good faith if the taxpayer knew, or reasonably

should have known, that the advisor lacked knowledge in the

relevant aspects of Federal tax law."  Sec. 1.6664-4(c)(1),

Income Tax Regs.

Petitioners claim that their reliance on Messrs. Wood and

Keegan was reasonable and in good faith and constitutes the

requisite showing under section 6664(c)(1), and we agree.

Petitioner Billy Evans testified credibly at trial that upon

request, Capitol Historic Trust, Inc., the donee organization,

furnished him with a list of appraisers and that he selected

Messrs. Wood and Keegan from this list after researching their

qualifications and backgrounds.  "I picked from a list of several

people, and I called and talked to them directly * * * about what

they did and whether or not they did these type of appraisals".

From the reports that Messrs. Wood and Keegan produced, it is apparent that they had access to all the relevant details regarding the properties and the contemplated facade easement contributions. Also, petitioner Billy Evans' trial testimony, which we find credible and compelling, demonstrated his actual good faith reliance on these reports. "I relied upon what I thought to be good appraisals to claim my deductions, and everything that I had read and seen at that time gave me no indication that there was any problem with these."

Finally, the reports themselves reveal that Messrs. Wood and Keegan were conversant with the regulations that authorize the comparable sales method and the before-and-after approach for valuing charitable contribution deductions.

Other than arguments in his posttrial briefs that do not constitute evidence under Rule 143(b) and that we discount for lacking an established evidentiary basis for this purpose, respondent has provided us with no sound grounds for doubting petitioners' showing of reasonable cause and good faith. We hold that respondent has failed to carry his burden of proof for the section 6662(a) accuracy-related penalty and that petitioners are not liable for any portion of the penalty arising from the disallowed charitable contribution deduction.

V. <u>Conclusion</u>

The Court has considered all of petitioners' and respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.